

**BC**

**FILED**
2/21/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**MAN**

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN ALAN CROFOOT, | ) | |
| *Plaintiff,* | ) | **Case No.:** 1:26-cv-00672 |
| | ) | |
| v. | ) | **Judge:** Jeffrey I. Cummings |
| | ) | |
| LIBERTY MUTUAL PERSONAL | ) | |
| INSURANCE COMPANY, | ) | |
| BJB PROPERTIES, INC., | ) | |
| LEXISNEXIS RISK SOLUTIONS, INC., | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) | |
| HUNTER WARFIELD, INC., AND | ) | |
| CREDIT CONTROL SERVICES, INC., | ) | |
| *Defendants.* | ) | |

## Plaintiff's Notice of Filing:

## The Spreadsheet That Ends The War (Exhibit G)

## I. TO THE HONORABLE JUDGE AND JURY OF THIS COURT:

1. Plaintiff Brian Crofoot, pro se, presents the following to the Court. This exhibit quantifies the modest nature of Plaintiff's Prayer for Relief relative to the preventable annual industry losses ($5.95B–$10.95B) addressed by the preventive measures sought (permit verification).

2. Respectfully submitted,

Brian Crofoot s/

**Date:** February 22, 2026

**Email:** crofoot.bc@gmail.com

# EXHIBIT G: The Spreadsheet That Ends The War

**Title: Comparative Analysis: Plaintiff's Prayer for Relief vs. Industry-Wide Savings from Permit Verification (Brian Crofoot, October 29, 2025)**

---

**The Spreadsheet:**

| PLAINTIFF'S DEMANDS | | | |
|---|---|---|---|
| **Category** | **Amount** | **Time to Recover** | **Notes** |
| Base Compensatory Damages (per defendant) | $7,200,000.00 | N/A | Actual injuries documented |
| × 6 Defendants | $43,200,000.00 | N/A | Total base |
| RICO Trebling (mandatory) | $129,600,000.00 | N/A | 18 U.S.C. § 1964(c) |
| ICFA Trebling (mandatory) | $129,600,000.00 | N/A | 815 ILCS 505/10a |
| Statutory Damages (all counts) | $30,500.00 | N/A | FCRA, FDCPA, RLTO |
| **SUBTOTAL (before punitives)** | **~$290M** | | **Congress sets the multipliers, not Plaintiff** |
| | | | |
| **INSURANCE INDUSTRY ANNUAL WASTE** | | | |
| Water damage claims (unpermitted systems) | $1.5B - $3.25B | 1 week | 10-25% of $13B annual |
| Fire/electrical claims (unpermitted work) | $2.5B - $4B | 2 weeks | 15-25% of fire claims |
| Wind/structural claims (unpermitted mods) | $800M - $1.5B | 1 week | 5-15% of wind claims |

| | | | |
|---|---|---|---|
| Litigation costs (preventable disputes) | $1.15B - $2.2B | 2 weeks | Code violation disputes |
| **TOTAL ANNUAL SAVINGS** | **$5.95B - $10.95B** | | **Conservative estimate** |
| | | | |
| **PAYBACK ANALYSIS** | | | |
| Settlement cost (if $290M judgment) | $290,000,000 | N/A | |
| Daily industry savings | $12.6M - $23.6M | 1 day | Annual ÷ 365 |
| Days to break even | | 12-23 days | Less than one month |
| 10-year industry savings | $46B - $86B | 10 years | After paying settlement |
| **Plaintiff's demand as % of 10-year savings** | | **0.34% - 0.63%** | **One-third of one percent** |
| | | | |
| **IMPLEMENTATION COSTS** | | | |
| **Category** | **Amount** | **Time to Recover** | **Notes** |
| Software/IT infrastructure | $0.00 | Immediate | Public permit databases exist |
| Staff training | ~$500K | 1 week | Industry-wide webinars |
| Policy form updates | $0.00 | Next cycle | Already done annually |
| Underwriting process time | +5 minutes | Per policy | Check permit database |
| TOTAL IMPLEMENTATION COST | ~$500K | | One-time expense |
| **NET FIRST-YEAR BENEFIT** | **$4.1B - $8.1B** | | **After settlement & implementation** |

## The Footnotes:

### Footnote 1: Source Annotations

All insurance industry figures derived from: Insurance Information Institute (2018-2023 data), ISO / Verisk Analytics 2015-2019 data, National Association of Insurance Commissioners reports, Consumer Reports, LexisNexis Home Trends Report (2024), and industry publications cited throughout the Complaint. Conservative estimates used throughout; actual savings likely higher.

### Footnote 2: Statutory Trebling

RICO and ICFA trebling are mandatory statutory provisions, not Plaintiff's choice. See 18 U.S.C. § 1964(c) (*"shall recover threefold"*); 815 ILCS 505/10a(a) *(same)*. Plaintiff cannot waive Congressional and General Assembly mandates.

### Footnote 3: Methodology

Calculations assume 10-25% of water damage claims, 15-25% of fire claims, and 5-15% of wind claims involve unpermitted building systems. LexisNexis 2024 reports $28B weather/ climate losses in 2023. NAIC states $13B water claims annually. These percentages are conservative given: (a) Defendants' own admission of 40+ unpermitted HVAC units at one property; (b) widespread industry acknowledgment of permit compliance gaps; (c) insurance industry practice of denying claims citing code violations discovered post-loss.

### Footnote 4: Competitive Advantage

First-mover insurers implementing permit verification will capture market share from competitors, further improving ROI. Settlement investment therefore purchases both loss prevention AND competitive positioning.

### Footnote 5: Downstream Participants

Downstream market participants including data-brokers, debt collectors, and compliant landlords will likewise see significant annual cost savings. Property values will increase through increased compliance with building codes. Landlords (100+ units) would save $1M per year for an industry wide of $1B annually. Costs of credit report and debt disputes will likewise decline by tens of millions of dollars per year conservatively estimated at $50M to $300M per year per data broker & large debt collector. Finally, it is estimated that 12,000 accidental deaths can be avoided (10% of 125k deaths).

## Footnote 6: When Everyone Implements This Solution

**Virtuous Cycle:**

1. **Insurers** verify permits → only insure legal properties
2. **Landlords** are forced to get permits → properties become legal and safer
3. **Tenants** aren't blamed for landlord violations → no false reporting
4. **CRAs** report accurate data → fewer disputes
5. **Debt Collectors** collect valid debts → higher success rates
6. **Everyone** saves money → market efficiency improves

---

## Savings Visualized: The Pie Chart

### Where Does Plaintiff's $290M Settlement Go?



Plaintiff's $290M demand (including mandatory statutory trebling) represents less than one-third of one percent of the 10-year industry savings from implementing the simple preventive measure at issue.

## References:

1. "Homeowners Insurance Losses, 2019-2023." Insurance Information Institute.

   https://www.iii.org/table-archive/21296

2. US Home Trends Report (2024). LexisNexis.

   https://risk.lexisnexis.com/insights-resources/research/lexisnexis-risk-solutions-home-trends-report

3. "Water Damage Insurance Claims Statistics 2024." Consumer Affairs. (Mar. 28, 2024.)

   https://www.consumeraffairs.com/homeowners/water-damage-insurance-claims-statistics.html