

**FILED**
3/12/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JKS

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN ALAN CROFOOT, | ) | |
| *Plaintiff,* | ) | **Case No.:** 1:26-cv-00672 |
| | ) | |
| v. | ) | **Judge:** Jeffrey I. Cummings |
| | ) | |
| LIBERTY MUTUAL PERSONAL | ) | |
| INSURANCE COMPANY, | ) | |
| BJB PROPERTIES, INC., | ) | |
| LEXISNEXIS RISK SOLUTIONS, INC., | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) | |
| HUNTER WARFIELD, INC., AND | ) | |
| CREDIT CONTROL SERVICES, INC., | ) | |
| *Defendants.* | ) | |

# <u>FIRST AMENDED COMPLAINT</u>

## I. TO THE HONORABLE JUDGE AND JURY:

1. Plaintiff Brian Crofoot, pro se, brings this action in the oldest American tradition – the citizen's petition to law and conscience. This Complaint is written in the spirit of those who, from the Founders onward, reminded the government why law exists: to ensure that truth and safety remain the measure of all commerce, and respectfully states:

## II. TABLE OF CONTENTS

I. TO THE HONORABLE JUDGE AND JURY:      1

II. TABLE OF CONTENTS      2

III. PARTIES      4

IV. JOINDER OF DEFENDANTS      5

V. JURISDICTION AND VENUE      6

VI. DEMAND FOR TRIAL BY JURY      7

VII. CASE SUMMARY      7

VIII. STATEMENT OF FACTS      8

    A. Plaintiff's Professional Qualifications      8

    B. The Sewage Contamination Incident      9

    C. Health and Safety Documentation      10

    D. Initial Good Faith Efforts      11

IX. THE COORDINATED CONSPIRACY      11

    A. Information Sharing Conspiracy      11

    B. Choreographed Parroting      12

    C. Portal Altering      12

    D. Regulatory Deception      13

    E. Coordinated Negative Consumer Reporting and Adverse Actions      13

    F. Enterprise Knowledge and Willful Continuation:      15

X. DAMAGES ALLEGED                                                                          16

XI. CAUSES OF ACTION                                                                       19

COUNT I - VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT

    ORGANIZATIONS ACT (RICO) (18 U.S.C. § 1962(c) and § 1962(d))                 19

COUNT II - VIOLATION OF FAIR CREDIT REPORTING ACT

    (15 U.S.C. §§ 1681e(b), 1681i, 1681s-2, 1681g, 1681n, 1681o)                   22

COUNT III - VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

    (15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g)                                 25

COUNT IV - VIOLATION OF ILLINOIS CONSUMER FRAUD ACT

    (815 ILCS 505/2)                                                              27

COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS                     29

COUNT VI - VIOLATION OF THE ILLINOIS INSURANCE INFORMATION

    AND PRIVACY PROTECTION ACT (IIPPA) (215 ILCS 5/1009 & 1014)                   30

COUNT VII – VIOLATION OF THE CHICAGO RESIDENTIAL LANDLORD TENANT

    ORDINANCE (RLTO) (Municipal Code of Chicago §§ 5-12-070, 110(f), & 150)        32

COUNT VIII - UNJUST ENRICHMENT                                                             34

XII. CONCLUSION                                                                           36

XIII. PRAYER FOR RELIEF                                                                    37

XIV. EXHIBIT INDEX                                                                         38

XV. VERIFICATION                                                                           41

XVI. VERIFICATION OF CALCULATIONS                                                          42

## III. PARTIES

2.     Plaintiff **Brian A. Crofoot** is a resident of Cook County, Illinois, currently residing at 4180 North Marine Drive, #1501, Chicago, Illinois 60613.

3.     Defendant **Liberty Mutual Personal Insurance Company** (*"Liberty / Liberty Mutual"*) is a Massachusetts corporation conducting business in Illinois and providing renters-insurance products to Illinois residents, formerly including Plaintiff.

4.     Defendant **BJB Properties, Inc.** (*"BJB"*) is a Delaware corporation owning and managing rental properties in Chicago, Illinois, including the premises at 6727 North Glenwood Avenue, Apt. C1, Chicago, Illinois 60626, where Plaintiff formerly resided.

5.     Defendant **LexisNexis Risk Solutions, Inc.** (*"LexisNexis"*) is a Georgia corporation doing business in Illinois that archives and disseminates insurance history information concerning Illinois residents, including Plaintiff. LexisNexis Risk Solutions Inc. is a subsidiary of **RELX Group plc**, a British multinational.

6.     Defendant **Experian Information Solutions, Inc.** (*"Experian"*) is an Ohio corporation doing business in Illinois that compiles and disseminates credit, rental, and background information on Illinois residents, including Plaintiff. Experian Information Solutions Inc. is a subsidiary of **Experian plc**, an Irish multinational.

7.     Defendant **Hunter Warfield, Inc.** (*"Hunter Warfield"*) is a Maryland corporation doing business in Illinois, engaged in the collection of debts on behalf of Defendant BJB Properties.

8.    Defendant **Credit Control Services, Inc.** *("CCS")* is a Delaware corporation doing business in Illinois under the name Credit Collection Services, engaged in the collection of debts on behalf of Defendant Liberty Mutual.

## IV. JOINDER OF DEFENDANTS

9.    All Defendants are properly joined under Federal Rule of Civil Procedure 20(a)(2) because:

A.  The right to relief against each Defendant arises out of the same series of transactions or occurrences - namely, the coordinated enterprise's response to Plaintiff's June 16, 2025 sewage contamination claim, spanning June 2025 through December 2025;

B.  All Defendants participated in the same association-in-fact RICO enterprise that systematically denied coverage/habitability, disseminated false information, and perpetuated economic harm through coordinated insurance denial, adverse reporting, and debt collection;

C.  The consumer reporting and debt collection functions performed by these Defendants were integral to the enterprise's coordinated scheme to suppress Plaintiff's claims and extract payments.

D.  Common questions of law and fact exist as to all Defendants, including:

1.  Whether Defendants coordinated through sharing confidential claim information *(Marquee Exhibits C & D, docket entry 14);*

2. Whether the June 16 incident involved sewage or mere condensate;

3. Whether Plaintiff's rent withholding and vacatur was lawful under RLTO;

4. Whether adverse reports and collection efforts were valid;

5. Whether Defendants' conduct violated RICO, FCRA, FDCPA, and state law; and

6. The amount of damages caused by the coordinated enterprise.

E. Judicial economy favors a joint trial because evidence substantially overlaps and bifurcation would require duplicative proceedings.

10. While Defendants performed different functions (insurance, landlord, reporting, collection), they each knowingly operated as components of a unified enterprise pursuing a common goal: suppressing Plaintiff's claim and extracting payments through coordinated denial, adverse reporting, and collection. ***Exhibits G & H*** depict enterprise coordination through financial analysis. ***Exhibits P, R, and T*** demonstrate all Defendants' knowledge of the hazards and issues.

## V. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States (RICO, FCRA, FDCPA). This Court has supplemental jurisdiction per 28 U.S.C. § 1367(a) because this action arises as part of the same controversy, common nexus of facts, and laws in Illinois.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides

here, Defendants conduct business here, and the events occurred in Cook County, Illinois.

## VI. DEMAND FOR TRIAL BY JURY

13.   Plaintiff prefers settlement. However, Plaintiff hereby exercises his Constitutional right to a trial by jury on all issues raised in this Complaint.

## VII. CASE SUMMARY

14.   This action arises from Defendants' coordinated misconduct following a June 16, 2025 sewage leak in Plaintiff's apartment at 6727 N. Glenwood Avenue, Unit C01, Chicago. Wastewater drenched Plaintiff's 200-amp main breaker panel and flooded the HVAC closet, creating unsafe electrical, fire, and health hazards *(Marquee Exhibits 1-5).*

15.   Defendants Liberty Mutual Personal Insurance Company and BJB Properties, Inc. coordinated to deny coverage and habitability: Liberty shared Plaintiff's confidential claim information with BJB without authorization *(Marquee Exhibit C)*, both misrepresented the conditions as *"perfectly safe,"* and issued a coordinated denial transmitted to the Illinois Department of Insurance *(Marquee Exhibit D).*

16.   Plaintiff withheld rent and vacated the premises on August 16, 2025 under RLTO protections. Defendants then perpetuated harm through adverse consumer reporting (false Rent Bureau delinquency by BJB to Experian, false claim entry by Liberty to LexisNexis CLUE) and debt collection on disputed amounts (Hunter Warfield and Credit Control Services pursuing invalid rent/premium debts).

17.   The remaining Defendants (LexisNexis, Experian, Hunter Warfield, Credit Control

Services) facilitated and profited from the harm by republishing inaccuracies, failing to reinvestigate disputes, and pursuing collections without validation.

18. Defendants' conduct violated federal and state laws including RICO (18 U.S.C. §§ 1962(c), (d)), FCRA (15 U.S.C. §§ 1681 et seq.), FDCPA (15 U.S.C. §§ 1692 et seq.), ICFA (815 ILCS 505/2), IIPPA (215 ILCS 5/1009, 1014), Chicago RLTO, and common law claims for intentional infliction of emotional distress and unjust enrichment.

19. Plaintiff seeks compensatory damages, punitive/treble damages, costs, fees, and injunctive relief to halt ongoing adverse reporting and collection.

## VIII. STATEMENT OF FACTS

### A. Plaintiff's Professional Qualifications

20. Plaintiff possesses rare and specialized expertise in environmental contamination assessment, specifically *(Exhibits A)*:

   A. Master of Engineering in Civil and Environmental Engineering from the University of Wisconsin-Madison, December 25, 2022 *(Ex. A-1)*.

   B. Certified as an Advanced Wastewater Operator in Wisconsin *(Ex. A-2)*.

   C. Certified as an Engineer-in-Training in Texas *(Ex. A-3)*.

21. Plaintiff earned his Master of Engineering degree while simultaneously employed in wastewater treatment operations, providing hands-on daily experience with sewage identification and contamination assessment.

22. Plaintiff currently serves as an Environmental Engineer for the Cook County Department

of Environment and Sustainability, where he enforces building, environmental, asbestos, and demolition codes. Plaintiff carries Badge #161, a five-point star credential issued by Cook County Government *(Ex. A-4)*.

23. Plaintiff holds credentials as a Federal Emergency Response Official issued by the Federal Emergency Management Agency (FEMA), authorizing him to assess and coordinate disaster response operations *(Ex. A-5)*.

24. On August 14, 2025, one day before Defendants' coordinated five-day cascade of adverse actions, the Cook County Board of Commissioners ratified a collective bargaining agreement (SEIU Local 73) granting County employees including Plaintiff compensation increases of $2,500 signing bonus and phased adjustments totaling 8% over two years **(Exhibit JJ)**. This governmental recognition of employee value during the period of Defendants' retaliation demonstrates that while Defendants portrayed Plaintiff as unreliable or problematic, his employer deemed him and his colleagues worthy of increased compensation.

**B. The Sewage Contamination Incident**

25. On June 16, 2025, Plaintiff's apartment at 6727 N. Glenwood Avenue, Unit C01, Chicago, Illinois, suffered sewage contamination when wastewater from an upstairs unit leaked through the ceiling, drenching Plaintiff's 200-amp electrical main breaker panel and flooding the HVAC closet *(Marquee Exhibits 1 to 5, Exhibit B)*.

26. Upon discovering the contamination, Plaintiff immediately applied his professional expertise as a certified wastewater operator to assess the situation and determined the liquid was sewage based on appearance, odor, and his professional training.

27. BJB's own maintenance employee, Isidro, documented the incident in writing on June 16, 2025 as *"Lek sawage in apt,"* confirming Plaintiff's professional assessment *(Exhibit U).*

28. The contamination occurred in a 1914-era building lacking fire stops, with Plaintiff's unit located directly above the building's 2-inch gas main serving multiple apartments, creating severe fire and explosion hazards due to the drenched electrical panel.

29. BJB was fined by the City of Chicago in 2020 for failing to provide stamped engineering plans and obtain required permits for HVAC installations throughout the building *(Exhibit II: ALJ Ruling).* According to City of Chicago FOIA records, approximately 40+ HVAC units were installed without permits in violation of building codes *(Exhibit V: FOIA Request).*

30. The *"condensate"* that Defendants claimed caused the leak originated from these unpermitted HVAC systems that were installed in violation of court orders and city regulations.

## C. Health and Safety Documentation

31. Plaintiff conducted spirometry testing on June 27, 2025 that documented a 6.5% year-over-year decline in lung function, consistent with toxic exposure to contaminated air *(Exhibit I).*

32. Plaintiff performed VOC (Volatile Organic Compound) testing confirming environmental toxicity in the apartment *(Exhibit J).*

33. Plaintiff's father, Bruce Crofoot, a retired industrial millwright, visually inspected the electrical panel on July 3, and determined the breakers showed signs of corrosion from sewage exposure.

### D. Initial Good Faith Efforts

34.  Plaintiff informed Liberty Mutual's Paris Tate of his employment with Cook County in environmental enforcement during their first telephone call (June 24, 2025) to avoid any appearance of conflict of interest.

35.  Plaintiff disclosed his professional qualifications to BJB in his certified rent withholding letter (June 30, 2025), identifying himself as a certified wastewater operator approved to sit for the Professional Engineer examination *(Exhibit Q).*

36.  On July 21, 2025, Plaintiff sent a formal notice to BJB's Jeffrey Ickow offering a mutual settlement requiring no money changing hands and allowing both parties to walk away with *"no harm, no foul" (Exhibit R).*

## IX. THE COORDINATED CONSPIRACY

### A. Information Sharing Conspiracy

37.  On June 27, 2025, Plaintiff explicitly instructed Liberty's claims adjuster Paris Tate in writing: *"Please do not inform BJB I have taken laboratory samples,"* clearly establishing Plaintiff's expectation of confidentiality regarding his claim investigation materials *(Exhibit T).*

38.  Despite this explicit written instruction, Liberty Mutual violated Plaintiff's directive and shared Plaintiff's private laboratory testing information with BJB's representatives.

39.  On July 25, 2025, BJB's attorney Kathleen Barry Boychuck authored a coordination letter containing detailed information about Liberty's claim investigation that she could only have obtained through unauthorized disclosure by Liberty *(Marquee Exhibit C).*

40. On July 28, 2025, this coordination letter was formally served via email by attorney Ansa Nasir, with copies to Kathleen Barry and BJB's leasing agent Jeff Ickow, demonstrating systematic coordination involving multiple legal representatives.

**B. Choreographed Parroting**

41. Following their information exchange, Defendants began using identical language to describe the incident, abandoning independent assessments in favor of mechanically coordinated responses.

42. Defendants synchronized their omission of critical facts, including the drenched electrical panel, Plaintiff's professional qualifications, the building's systematic code violations, and the health impacts documented through medical testing.

43. Liberty's August 15, 2025 denial letter authored by Veronika Grant adopted language and reasoning that parroted BJB's position. Plaintiff's rebuttal was ignored, demonstrating systematic coordination rather than independent investigation *(Exhibit W).*

44. On August 27, Liberty Mutual's Claims Manager April Sandoval and Senior Adjuster Ryan Basinger, issued a formal response to the IDOI and reiterated their denials *(Ex. D).*

45. The financial incentives of Liberty Mutual and BJB Properties aligned almost perfectly: Liberty stood to save approximately $14,000 by denying property coverage, avoiding $1M liability limit, while BJB sought to collect approximately $14,000 in disputed rent.

**C. Portal Altering**

46. During the period of regulatory pressure from the Illinois Department of Insurance in August 2025, Defendants engaged in *"portal altering"* - systematic manipulation of digital

evidence to conceal their coordination.

47. Liberty manipulated Plaintiff's online account portal, altering claim file information and restricting access to historical records immediately after Plaintiff provided preliminary case documentation to state regulators *(Exhibit X)*.

48. BJB simultaneously manipulated work order documentation, post-dating maintenance records via email to alter the timeline of repairs and coordinate their false narrative *(Exhibits Y)*.

## D. Regulatory Deception

49. When the Illinois Department of Insurance requested Liberty's claim file, Liberty provided false information, specifically denying that they had shared any documentation with BJB's representatives *(Marquee Exhibit D)*.

50. This denial was demonstrably false, as evidenced by Kathleen Boychuck's July 25 letter quoting specific details from Liberty's claim investigation.

51. Liberty's false statements to state regulators constituted systematic deception designed to conceal their coordination with the opposing party.

52. Subsequent to Plaintiff's August 15, 2025, 311 complaint, on September 9, BJB refused to allow the Chicago Building Department to inspect Plaintiff's former apartment. The Building Department issued a citation to BJB for their refusal *(Exhibit Z)*.

## E. Coordinated Negative Consumer Reporting and Adverse Actions

53. Defendants coordinated to generate and perpetuate negative consumer reports, causing documented adverse actions in housing and insurance:

A. On July 16, 2025, BJB reported Plaintiff delinquent on July rent to Experian's Rent Bureau *(Exhibit K: Rent Bureau Report).* This report was immediately cited by Becovic Management in denying Plaintiff's July 16 rental application, despite strong credit, income, employment, references, and background *(Ex. HH, Becovic emails).*

B. Liberty Mutual reported to LexisNexis' CLUE database a denied *"weather damage"* claim dated June 16, 2025, with $0 paid *(Exhibits L and W).* On August 4, 2025, State Farm cited this CLUE entry when quoting renter's insurance for Plaintiff's new residence, deeming him high-risk for at least five years *(Exhibit E).* The agent wrote this practice is unfair, *"claims follow the person and not the property"* — an adverse action under 15 U.S.C. § 1681a(k).

C. LexisNexis locked Plaintiff's CLUE file pending validation (September 8–10, 2025). After Plaintiff submitted identity documents, LexisNexis issued a September 15 report containing inaccuracies, including the altered June 16 claim *(Exhibit L).* On September 16, 2025, Plaintiff's certified request for his CLUE report was delivered and accepted at LexisNexis's Atlanta PO Box *(Ex. BB: Sep. 16, CLUE request).*

D. A second certified mailing on September 25, asserting rebuttal rights under 15 U.S.C. § 1681i, was returned unopened. LexisNexis rejected Plaintiff's certified rebuttal detailing 19 errors, refusing reinvestigation *(Exhibit S: Returned CLUE rebuttal envelope).*

E. On October 7, 2025, Experian stated *"no delinquencies were reported on your credit file,"* yet records show Experian Rent Bureau transmitted BJB's July 16 delinquency to Becovic the next day *(Exhibit M: Experian traditional credit report Oct. 7, 2025).*

F. Experian validated and perpetuated the report by directing Plaintiff to dispute with BJB — the furnisher whose conduct is at issue — creating a self-referential loop that frustrated independent verification.

54. Plaintiff sent certified written dispute notices on September 24, 2025, to Experian (Rent Bureau and credit report), LexisNexis (CLUE rebuttal), Credit Collection Services ($18 Liberty debt, Aug. 30), and Hunter Warfield ($1,607 BJB's rent debt, Sep. 9) *(Exs. P-1 through P-4).*

55. This pattern of inaccurate, coordinated, and uninvestigated reporting across Experian Rent Bureau and LexisNexis CLUE, furnished by BJB and Liberty Mutual, and debt collections by Hunter Warfield and CCS *(Exs. N, O)*, furthered the enterprise's goal of punishing Plaintiff and controlling the narrative, resulting in documented economic harm (denied housing/insurance) and reputational damage.

**F. Enterprise Knowledge and Willful Continuation:**

56. The enterprise's willfulness is demonstrated by Defendants' response to notice. On September 24, 2025, Plaintiff sent certified written disputes to LexisNexis, Experian, Hunter Warfield, and Credit Control Services, detailing Liberty Mutual's unauthorized disclosure of confidential claim information to BJB Properties, BJB's operation of 40+ unpermitted HVAC units in violation of building codes, the sewage contamination creating life-safety hazards, and the coordinated nature of Defendants' adverse actions *(Exhibits P-1 through P-4).*

57. Rather than investigate these allegations or cease participation in the scheme, Defendants doubled down: LexisNexis returned Plaintiff's certified rebuttal unopened *(Exhibit S),*

Experian validated the disputed information without independent verification *(Exhibit M),* and debt collectors continued pursuing invalid debts *(Exhibits N and O).*

58. This knowing continuation after detailed notice of the fraud demonstrates willful violations of FCRA (15 U.S.C. § 1681n), FDCPA, and ICFA, and establishes that downstream Defendants knowingly participated in the RICO enterprise despite awareness of its fraudulent nature.

59. On October 26, 2025, one day after Plaintiff posted a public review of BJB, Liberty Mutual mailed their August 15, 2025 denial to Plaintiff's former address at 6727 N. Glenwood Avenue, despite having received Plaintiff's address change via portal submission (August 7, 2025), emailed rebuttal (August 18, 2025), and certified mail (September 3, 2025). The United States Postal Service flagged this mailing with *'NOTIFY SENDER OF NEW ADDRESS,'* documenting Liberty's willful refusal to acknowledge Plaintiff's move-out *(Exhibit KK: Oct. 26, 2025 Envelope with USPS Notification Stamp).*

## X. DAMAGES ALLEGED

60. Plaintiff has suffered concrete, quantifiable, and foreseeable damages as a direct and proximate result of Defendants' coordinated misconduct, including unauthorized information sharing, deceptive misrepresentations, denial of coverage/habitability, and perpetuation of harm through adverse credit/debt reporting.

### A. Rejection of Reasonable Settlement Offers

61. On July 21, 2025, Plaintiff offered BJB a mutual release with no payment or admission of liability *(Exhibit R).* BJB rejected it.

62. On July 25, 2025, Plaintiff requested Liberty Mutual's cooperation and transparency under the Illinois Insurance Code *(Exhibit CC).* Liberty ignored it.

63. LexisNexis, Experian, Hunter Warfield, and CCS each ignored Plaintiff's disputes despite notification of the hazards *(Exhibits P).*

64. Defendants' conduct harms Plaintiff's professional and social prospects. Several third parties and employers including Suzanne Malec-McKenna and IDOI, conducted adverse actions against Plaintiff due to the complaint *(Exhibit F).*

65. Defendants' refusal to resolve reasonably escalated the harm, demonstrating willful and wanton disregard warranting punitive damages. Their refusals cause ongoing harm to Plaintiff's professional and social reputation exceeding $5,000,000.

**B. Actual Economic Losses**

66. Relocation and moving expenses: approximately $2,000+ *(Exhibit AA).*

67. Out-of-pocket medical and related costs from exposure-related illness (spirometry decline, VOC exposure): to be proven at trial.

68. Denied HMO/Blue Cross treatment claims stemming from the incident *(Exhibit F).*

69. Withheld rent value and credit/reporting harm (adverse Rent Bureau entries, debt collection fees). Total actual economic losses exceed $50,000, exclusive of incidental costs.

**C. Emotional Distress and Pain & Suffering**

70. Plaintiff endured 60 days of unsafe, uninhabitable conditions (drenched 200-amp breaker panel, sewage contamination, fire/explosion risk over gas main, mold/toxicity) while Defendants gaslit his expert assessment as baseless complaints and coordinated to deny coverage/habitability (file share violation, *"perfectly safe"* misrepresentation, denial

parroting).

71.   This outrageous conduct caused severe emotional distress, including anxiety, fear of

fire/electrocution/mold, sleep disruption, and ongoing stress from blacklisting/retaliation.

Compensatory damages for emotional distress are reasonably estimated at $3,000,000.

**D. Punitive and Treble Damages**

72.   Defendants' willful, coordinated deception (Boychuck's letter **(Ex. C)**, IDOI false

statements, portal manipulation) and ongoing perpetuation of harm through

blacklisting/collections justify punitive damages to deter similar conduct. Treble damages

are warranted under RICO and ICFA where applicable.

73.   The insurance industry incurs $6–12 billion in annual preventable waste from unverified

building permits before issuing policies **(Exhibit G, Actuarial Analysis).** Plaintiff's

requested damages are reasonable compensation for individual harm while also serving

to deter enterprise-wide practices.

**E. Total Damages**

74.   Plaintiff seeks compensatory damages in excess of $8,300,000, plus punitive and treble

damages under applicable statutes, costs, fees, and such other relief as the Court deems

just.

# XI. CAUSES OF ACTION

## COUNT I - VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)

### (18 U.S.C. § 1962(c) and § 1962(d))

75.   Plaintiff incorporates all preceding allegations and paragraphs as fully set forth herein.

**A. The Enterprise**

76.   Defendants operated an association-in-fact enterprise ("The Enterprise") consisting of Liberty Mutual, BJB Properties, LexisNexis, Experian, Hunter Warfield, and Credit Control Services and all are essential components. The Enterprise functioned through coordinated use of insurance, rental, credit reporting, and debt collection systems to deny coverage/habitability, generate adverse reports, and perpetuate economic harm for profit via retained premiums, rent, collection fees *(Exhibit H: Enterprise Map)*.

**B. Pattern of Racketeering Activity**

77.   Defendants engaged in a pattern of racketeering activity through multiple acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) in interstate commerce, as follows (incorporating Factual Background ¶¶ [20–59]):

   A.   **Liberty Mutual & BJB Properties (Primary Actors)**

     1.   BJB's concealment of an unpermitted HVAC unit in Plaintiff's former apartment in violation of an Administrative Law Judge's 2020 order (mail / wire fraud).

     2.   BJB issued a 5-day cure notice on July 14 demanding $1,607 under threat of eviction despite known habitability violations; Plaintiff paid under duress

(***Exhibit EE;*** extortion 18 U.S.C. § 1951, Hobbs Act).

3. Liberty's unauthorized disclosure of confidential claim information to BJB after Plaintiff's explicit written instruction not to share (June 27–July 2, 2025; mail/wire fraud).

4. Coordinated Liberty denial letter parroting identical language and omissions (August 15, 2025; mail/wire fraud).

5. Liberty's false statements to Illinois Department of Insurance denying any sharing with BJB (August 27, 2025; mail/wire fraud, obstruction of proceedings).

6. Liberty's retaliatory mailing of their Aug. 15 denial letter to Plaintiff's known invalid address within 24 hours of Plaintiff's public disclosure of Defendants' misconduct (October 26, 2025; mail fraud, witness intimidation 18 U.S.C. § 1512)

B. **LexisNexis & Experian (Data Brokers)**

1. Transmission and perpetuation of inaccurate/disputed claim and delinquency data in CLUE and Rent Bureau systems (July 16 – September 15, 2025, ongoing; mail/wire fraud).

2. Failure to reinvestigate certified disputes and selective return of rebuttal correspondence (September 24–October 7, 2025; mail fraud).

C. **Hunter Warfield & Credit Control Services (Debt Collectors)**

1. Pursuit of disputed/inflated debts originated by Liberty/BJB without validation (August 30–September 24, 2025; mail/wire fraud).

2. Failure to investigate / acknowledge disputes (mail/wire fraud).

78. The predicate acts are related (common purpose: suppress claims, extract payments) and demonstrate continuity (closed-ended over months; open-ended threat via ongoing blacklisting/retaliation).

## C. §1962(c) – Substantive Violation

79. Liberty Mutual and BJB Properties conducted the affairs of the Enterprise through the pattern of racketeering activity described above.

80. September 24-October 7, 2025: After receiving Plaintiff's detailed certified notices describing the enterprise's coordination, Liberty's unauthorized disclosure, and BJB's unpermitted HVAC operations *(Exhibits P-1 through P-4),* Defendants LexisNexis, Experian, Hunter Warfield, and Credit Control Services continued facilitating the enterprise by perpetuating false reports and collecting invalid debts, demonstrating knowing participation in the pattern of racketeering activity despite notice of the underlying fraud (mail/wire fraud, obstruction 18 U.S.C. § 1512).

## D. §1962(d) – Conspiracy

81. All Defendants knowingly agreed to violate § 1962(c) through coordinated acts, including the July 25, 2025 unauthorized sharing of Liberty claim details in Kathleen Boychuck's letter *(Exhibit C),* which coincided with Plaintiff's settlement overture to Liberty *(Exhibit CC)* and was followed by denial parroting, adverse reporting, and debt collection.

## E. Injury to Business or Property

82. As a direct and proximate result, Plaintiff suffered injury to business or property within 18 U.S.C. § 1964(c), including relocation costs, denied insurance/medical treatment,

adverse credit/housing actions, and ongoing economic harm from blacklisting.

**WHEREFORE,** Plaintiff respectfully requests judgment against each Defendant, jointly and severally:

1. Declare violations of 18 U.S.C. §§ 1962(c) and (d);

2. Award compensatory damages in excess of $8,300,000 (per Defendant), plus treble damages under § 1964(c);

3. Award punitive damages for willful conduct;

4. Award costs, fees, injunctive relief, and other just relief.


## COUNT II - VIOLATION OF FAIR CREDIT REPORTING ACT

## (15 U.S.C. §§ 1681e(b), 1681i, 1681s-2, 1681g, 1681n, 1681o)

83.  Plaintiff incorporates all preceding allegations and paragraphs as fully set forth herein.

**A. Defendants' Roles and Duties Under the FCRA**

84.  Furnishers (Liberty Mutual and BJB Properties): Required to provide complete and accurate information and to correct errors upon notice (§ 1681s-2).

85.  Consumer Reporting Agencies (LexisNexis and Experian): Required to follow reasonable procedures to assure maximum possible accuracy (§ 1681e(b)), conduct reasonable reinvestigations of disputes (§ 1681i), and provide full file disclosures upon request (§ 1681g).

86.  Violations were willful or negligent, entitling Plaintiff to actual damages, statutory

damages, punitive damages, costs, and fees (§§ 1681n, 1681o).

## B. False Furnishing and Inaccurate Reporting

87. Liberty Mutual furnished to LexisNexis' CLUE database an inaccurate *"weather damage"* claim dated June 16, 2025, with $0 paid *(Exhibit L),* implying fault or fraud by Plaintiff.

88. BJB Properties furnished to Experian's Rent Bureau a false July 2025 rent delinquency after Plaintiff lawfully withheld rent under RLTO *(Exhibit K).*

89. LexisNexis and Experian republished these inaccuracies to third parties (insurers/landlords) even after receiving Plaintiff's certified disputes (September 24–25, 2025; *Exhibits P).*

## C. Failure to Reinvestigate and Correct

90. LexisNexis locked Plaintiff's CLUE file pending validation (September 8–10, 2025), issued an inaccurate September 15 report *(Exhibit L),* and rejected Plaintiff's certified rebuttal by returning it unopened *(Exhibit S).*

91. Experian issued contradictory letters (October 7, 2025: *"no delinquencies reported"* while disseminating the July 16 delinquency; *Exhibit M: Experian traditional credit report, Oct. 7, 2025).*

92. Defendants failed to conduct reasonable reinvestigations and mark disputed information as such, violating §§ 1681e(b) and 1681i.

## D. Failure to Flag Disputed Status

93. Liberty Mutual received Plaintiff's July 8, 2025 written dispute of the claim handling and characterization but furnished/verified the record to LexisNexis without marking it disputed (§ 1681s-2(a)(3)).

94.    BJB furnished false delinquency to Experian without correction after notice.

**E. Adverse Actions**

95.    The inaccurate CLUE entry caused State Farm to deem Plaintiff high-risk for renter's

       insurance (August 4, 2025; Exhibit E; adverse action under § 1681a(k)).

96.    The Rent Bureau delinquency caused Becovic Management to deny Plaintiff's July 16

       rental application.

**F. Resulting Harm**

97.    As a direct and proximate result, Plaintiff suffered:

       A.   Denial/delay of housing and insurance opportunities.

       B.   Increased insurance premiums and financial costs.

       C.   Reputational and emotional harm from ongoing adverse reporting.

**WHEREFORE,** Plaintiff respectfully requests judgment against each Defendant, jointly and
severally:

1.    Declare violations of 15 U.S.C. §§ 1681e(b), 1681i, 1681s-2, 1681g;

2.    Award actual damages, statutory damages of $1,000 per willful violation (§ 1681n), and

      punitive damages for willful/reckless conduct;

3.    Award injunctive relief prohibiting further dissemination of inaccurate data and

      mandating correction;

4.    Award costs, attorney's fees, and other just relief.

## COUNT III - VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

## (15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g)

98.    Plaintiff incorporates all preceding allegations and paragraphs as fully set forth herein.

### A. Defendants' Roles

99.    Defendants Hunter Warfield, Inc. and Credit Control Services, Inc. are debt collectors under § 1692a(6). They attempted to collect:

    A.  **Hunter Warfield:** $1,607 alleged unpaid rent claimed by BJB Properties.

    B.  **Credit Control Services:** $18 alleged unpaid premium claimed by Liberty Mutual.

100.   Defendants BJB Properties and Liberty Mutual are vicariously liable as principals who authorized, directed, and benefitted from these collection activities.

### B. Unlawful Collection Practices

101.   Beginning July 2025, Defendants engaged in unlawful collection:

    A.  August 29, 2025: BJB's Crystal Perez issued a duplicative $1,607 rent demand while Hunter Warfield pursued the same debt *(Exhibit DD)*.

    B.  August 30, 2025: CCS sent a text demanding $18 back-dated premium, threatening adverse credit consequences *(Exhibit N)*.

    C.  September 9, 2025: Hunter Warfield emailed demanding $1,607 rent despite Plaintiff's lawful RLTO lease termination and dispute notices *(Exhibit O)*.

### C. Failure to Validate and Continued Collection After Dispute

102.   Defendants failed to provide required written validation notices within five days of initial

communication (§ 1692g(a)).

103. After receiving Plaintiff's certified disputes (September 24, 2025; **Exhibits P),** Defendants continued collection efforts in violation of § 1692g(b).

**D. False, Misleading, and Unfair Practices**

104. Defendants misrepresented the character, amount, and legal status of the debts (§ 1692e(2)(A)).

105. They threatened consequences they could not lawfully impose (§ 1692e(5)) and used unfair means to collect (§ 1692f), including implicit threats of credit impairment to coerce payment on disputed/invalid debts.

**E. Resulting Harm**

106. As a direct and proximate result, Plaintiff suffered emotional distress, anxiety from collection threats, reputational harm from adverse reporting, out-of-pocket costs for disputes, and loss of time/peace of mind.

**WHEREFORE**, Plaintiff respectfully requests judgment against each Defendant, jointly and severally:

1. Declare violations of 15 U.S.C. §§ 1692d, 1692e, 1692f, 1692g;

2. Award statutory damages of $1,000 per violation (§ 1692k(a)(2)(A));

3. Award actual damages, punitive damages for willful conduct, costs, attorney's fees, and injunctive relief prohibiting further collection/reporting of disputed debts;

4. Grant such other relief as the Court deems just and proper.

# COUNT IV - VIOLATION OF ILLINOIS CONSUMER FRAUD ACT

# (815 ILCS 505/2)

107.   Plaintiff incorporates all preceding allegations and paragraphs as fully set forth herein.

## A. Unfair and Deceptive Practices

108.   Defendants engaged in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of 815 ILCS 505/2 by:

A.   Coordinating to misrepresent the nature of the sewage contamination incident and Plaintiff's expert assessment as baseless tenant complaints, despite knowing the facts supported sewage exposure (file share violation, *"perfectly safe"* misrepresentation, denial parroting).

B.   Suppressing material facts regarding the drenched electrical panel, HVAC flood, health impacts, and building code violations while denying coverage and habitability.

C.   Disseminating false or misleading information through coordinated consumer reports and debt collection (adverse Rent Bureau/CLUE entries, continued collection on disputed debts).

D.   Making false statements to the Illinois Department of Insurance denying prior sharing with BJB (August 27, 2025; ***Exhibit D).***

## B. Causation and Harm

109.   These deceptive and unfair practices directly caused Plaintiff:

A.   Economic harm (relocation costs, denied insurance/medical treatment, withheld rent value, credit/reporting harm).

B. Emotional distress (anxiety from prolonged unsafe conditions, gaslighting, ongoing blacklisting/retaliation).

C. Reputational harm (adverse reports impacting housing/insurance access).

## C. Specific Examples

110.  Defendants applied inconsistent standards:

A. Liberty Mutual denied Plaintiff's request for claim file transparency while claiming proprietary protection in response to IDOI inquiry.

B. BJB demanded payment on disputed debts while refusing building inspection.

C. LexisNexis and Experian selectively accepted/rejected certified mail to avoid disputes.

D. These acts constitute unfair practices by exploiting information asymmetry and shifting liability.

111.  Defendants engaged in unfair and deceptive practices by falsely characterizing Plaintiff's professional environmental assessment as *'tenant complaints,'* then denying all remedies to force litigation, then using compelled litigation as *'proof'* of dishonesty, creating a circular trap that harms consumers regardless of choice made.

112.  The circular trap was executed with full knowledge of its illegality. This knowing continuation after notice demonstrates that the harm was not accidental but intentional and coordinated, warranting punitive damages under ICFA (815 ILCS 505/10a).

**WHEREFORE**, Plaintiff respectfully requests judgment against each Defendant, jointly and severally:

1.  Declare violations of 815 ILCS 505/2;

2.  Award compensatory damages in excess of $8,300,000;

3.  Award treble damages under 815 ILCS 505/10a;

4.  Award punitive damages for willful conduct;

5.  Award costs, attorney's fees, and such other relief as the Court deems just and proper.

## COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

113.  Plaintiff incorporates all preceding allegations and paragraphs as fully set forth herein.

114.  Defendants' conduct was extreme and outrageous, exceeding all bounds of decency tolerated in a civilized society.

115.  Defendants forced Plaintiff to endure uninhabitable conditions for 60 days (June 16 – August 16, 2025), including a sewage-drenched 200-amp main breaker panel directly above a 2-inch gas main serving multiple apartments, creating severe fire, electrocution, and explosion hazards.

116.  Defendants ignored repair requests, misrepresented the conditions as *"perfectly safe"* despite known corrosion/mold/toxicity risks, and coordinated to deny coverage/ habitability while gaslighting Plaintiff's expert sewage assessment as baseless tenant complaints *(Marquee Exhibits).*

117.  This outrageous conduct was intentional or reckless, as Defendants knew or should have known of the serious health/safety risks from the exposure (spirometry decline, VOC toxicity, documented illness).

118.  As a direct and proximate result, Plaintiff suffered severe emotional distress, including

anxiety, fear of fire/electrocution/mold, sleep disruption, and ongoing stress from retaliation and blacklisting.

**WHEREFORE,** Plaintiff requests judgment against each Defendant, jointly and severally:

1. Award compensatory damages for severe emotional distress in excess of $3,000,000;

2. Award punitive damages for willful and outrageous conduct;

3. Award costs and such other relief as the Court deems just and proper.

## COUNT VI - VIOLATION OF THE ILLINOIS INSURANCE INFORMATION AND PRIVACY PROTECTION ACT (IIPPA)

## (215 ILCS 5/1009 & 1014)

119.  Plaintiff incorporates all preceding allegations and paragraphs as fully set forth herein.

**A. Liberty Mutual's Violations**

120.  Defendant Liberty Mutual Personal Insurance Company is an insurance institution under 215 ILCS 5/1003.

121.  On July 8, July 25, and July 26, 2025, Plaintiff submitted written requests under § 1009(A) for access to his recorded personal information and disclosure of all persons/entities to whom Liberty transmitted such information. Liberty failed to respond within 30 business days and refused to provide the complete claim file or disclosure list, violating § 1009(2) *(Exhibit GG: July 26, 2025 Certified Letter to Liberty).*

122.  Liberty disclosed Plaintiff's confidential claim-file materials to BJB Properties, Inc. and its attorney Kathleen Barry Boychuck without Plaintiff's authorization and outside any

permissible category under § 1014 *(Exhibit C)*. The disclosure was for an improper purpose: to assist BJB in contesting coverage and coordinating responses.

## B. BJB's Aiding and Abetting Liability

123.  Defendant BJB Properties, Inc., acting through its counsel Boychuck, knowingly accepted, retained, and used Plaintiff's confidential information obtained from Liberty in violation of § 1014. BJB participated in, enabled, and benefitted from Liberty's wrongful disclosure and is jointly and severally liable under Illinois common-law principles of aiding and abetting and concerted action.

## C. Resulting Harm

124.  As a direct and proximate result of these violations, Plaintiff suffered loss of privacy, economic harm (increased difficulty obtaining housing/insurance due to coordinated adverse actions), and emotional distress.

**WHEREFORE**, Plaintiff respectfully requests judgment against each Defendant, jointly and severally:

1.  Declare violations of 215 ILCS 5/1009 and 1014;

2.  Award actual and compensatory damages in excess of $8,300,000;

3.  Award costs of suit and reasonable attorney's fees under § 1021(C);

4.  Grant injunctive relief requiring compliance with the Act, including correction of any misuse of Plaintiff's information;

5.  Grant such other relief as the Court deems just and proper.

## COUNT VII – VIOLATION OF THE CHICAGO

## RESIDENTIAL LANDLORD TENANT ORDINANCE (RLTO)

## (Municipal Code of Chicago §§ 5-12-070, 110(f), & 150)

125. Plaintiff incorporates all preceding allegations and paragraphs as fully set forth herein.

**A. BJB's Violations of Habitability and Retaliation Duties**

126. Defendant BJB Properties, Inc. owed Plaintiff a duty under § 5-12-070 to maintain the premises in a safe and habitable condition, compliant with building, electrical, and mechanical codes.

127. BJB failed to repair the sewage-drenched 200-amp breaker panel and HVAC flood (June 16 – August 16, 2025), creating ongoing fire, electrocution, and health hazards *(Marquee Exhibits 1-5).*

128. On July 26, 2025, Plaintiff provided formal notice of the unremediated life-safety hazards and terminated the lease under § 5-12-110(f)(5) due to uninhabitable conditions *(Exhibit FF).* BJB retaliated in violation of § 5-12-150 by:

   A. Disseminating false delinquency reports to Experian Rent Bureau (July 16, 2025; *Exhibit K).*

   B. Pursuing collection on disputed rent through Hunter Warfield (September 9, 2025; *Exhibit O).*

**B. Liberty Mutual's Aiding and Abetting**

129. Defendant Liberty Mutual Personal Insurance Company aided and abetted BJB's violations by disclosing Plaintiff's confidential claim-file materials to BJB's counsel

without authorization *(Exhibit C)*, enabling coordinated denial and retaliation that chilled Plaintiff's exercise of RLTO rights.

## C. Resulting Harm

130.  As a direct and proximate result, Plaintiff suffered constructive eviction under § 5-12-110(f)(5), relocation costs, emotional distress from prolonged unsafe conditions, reputational harm from adverse reports, and economic losses.

**WHEREFORE**, Plaintiff respectfully requests judgment against each Defendant, jointly and severally:

1. Declare violations of §§ 5-12-070, 5-12-110(f)(5), 5-12-150;

2. Award statutory damages of $3,090 per violation as authorized;

3. Award actual and compensatory damages in excess of $8,300,000;

4. Award punitive damages for willful retaliation;

5. Award costs and reasonable attorney's fees under § 5-12-180;

6. Grant injunctive relief prohibiting further retaliation or adverse reporting related to this matter;

7. Grant such other relief as the Court deems just and proper.

# COUNT VIII - UNJUST ENRICHMENT

131.  Plaintiff incorporates all preceding allegations and paragraphs as fully set forth herein.

## A. Elements of Unjust Enrichment

132.  Under Illinois law, unjust enrichment requires that Defendants received a benefit at Plaintiff's expense and retention would be inequitable.

## B. BJB Properties' Unjust Enrichment

133.  Plaintiff paid BJB Properties, Inc. approximately $22,907 in rent and fees from May 2024 to July 2025 for occupancy of 6727 N. Glenwood Avenue, Unit C01, Chicago.

134.  BJB failed to provide habitable premises as required under the lease and RLTO § 5-12-070: sewage-drenched 200-amp breaker panel, HVAC flood, unpermitted mechanical systems, ongoing fire/electrocution/health hazards *(Marquee Exhibits 1 through 5, and B).*

135.  Retention of these payments is unjust because BJB provided no value — uninhabitable, hazardous conditions — and concealed violations while accepting full rent.

## C. Liberty Mutual's Unjust Enrichment

136.  Plaintiff paid Liberty Mutual Personal Insurance Company approximately $137 in premiums for renters insurance coverage.

137.  Liberty denied the valid claim for sewage damage/loss of use, disclosed confidential claim information to BJB without authorization *(Exhibit C),* and coordinated to misrepresent conditions as *"perfectly safe."* Liberty provided no coverage or benefit, instead enabling harm.

138.  Retention of premiums is unjust because Liberty breached its duties and actively

contributed to Plaintiff's losses.

**D. Data Brokers' and Debt Collectors' Unjust Enrichment**

139.  Defendants LexisNexis Risk Solutions, Inc., Experian Information Solutions, Inc., Hunter Warfield, Inc., and Credit Control Services, Inc. received fees and commissions from publishing inaccurate reports and collecting on disputed debts originated by Liberty/BJB (Rent Bureau/CLUE entries, $1,607 rent debt, $18 premium debt).

140.  These benefits derived from false information furnished by Liberty/BJB, which Defendants refused to correct despite Plaintiff's disputes *(Exhibits P).*

141.  Retention is unjust because Defendants profited from violations of FCRA/FDCPA and perpetuated harm without verification.

**E. No Adequate Remedy at Law**

142.  While other counts seek compensatory and punitive damages, this Count seeks the distinct equitable remedy of disgorgement and restitution of payments to which Defendants were not entitled. Legal remedies are inadequate because payments were made and retained, and only equity can restore the status quo.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally:

1.  Disgorgement of $22,907 in rent paid to BJB Properties;

2.  Disgorgement of $137 in premiums paid to Liberty Mutual;

3.  Disgorgement of all fees and commissions received by LexisNexis, Experian, Hunter Warfield, and Credit Control Services from false reports/collections;

4. Pre- and post-judgment interest;

5. Costs of suit;

6. Such other equitable relief as the Court deems just and proper.


## XII. CONCLUSION

143. This action arises from Defendants' coordinated misconduct following the June 16, 2025 sewage contamination incident, including unauthorized disclosure of confidential claim information, misrepresentation of hazardous conditions, denial of coverage and habitability, adverse consumer reporting, and retaliatory debt collection. These acts violated federal and state laws including RICO, FCRA, FDCPA, ICFA, IIPPA, RLTO, and common-law claims for intentional infliction of emotional distress and unjust enrichment.

144. Plaintiff seeks compensatory damages, treble and punitive damages where applicable, statutory damages, costs, fees, injunctive relief to halt ongoing harm, and such other relief as the Court deems just and proper.

145. For in the end, law may guide but conscience is all.

Respectfully submitted,

*Brian Crofoot* (signature)

Brian Crofoot, Plaintiff, Pro se

## XIII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Brian Alan Crofoot respectfully requests that this Honorable Court

enter judgment in his favor and against Defendants, jointly and severally, as follows:

1. Award compensatory damages in excess of $8,300,000 per Defendant, for actual economic

    losses (relocation, denied medical/insurance treatment, credit harm, withheld rent value),

    emotional distress, reputational injury, and ongoing harm;

2. Award treble damages under RICO (18 U.S.C. § 1964(c)) and ICFA (815 ILCS 505/10a)

    where applicable;

3. Award punitive damages in an amount sufficient to punish willful and outrageous

    conduct and deter similar misconduct;

4. Award statutory damages of $1,000 per violation under FCRA (15 U.S.C. §§ 1681n, 1681o),

    FDCPA (15 U.S.C. § 1692k), and RLTO as authorized by law;

5. Award costs of suit and reasonable attorney's fees where permitted by statute (including

    FCRA, FDCPA, ICFA);

6. Grant injunctive relief requiring Defendants to: (a) Verify building permits before issuing

    policies, (b) Cease sharing confidential claim files, (c) Correct false information in

    consumer reports, (d) Cease all adverse reporting and collection activity on disputed

    debts/claims; and (e) Implement compliance procedures to prevent future violations.

7. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

BRIAN ALAN CROFOOT, Pro Se,        4180 North Marine Drive, Apt 1501, Chicago, IL 60613

## XIV. EXHIBIT INDEX

**Exhibit A.**   Plaintiff's professional qualifications summary (resume, certifications, Cook County employment verification).

**Exhibit B.**   Photos/documentation of sewage-drenched 200-amp breaker panel and HVAC flood (June-August 2025). Notable photos filed as ***Marquee Exhibits 1-5, docket #14.***

**Exhibit C.**   Kathleen Boychuck's July 25, 2025 coordination letter quoting Liberty claim details (unauthorized disclosure proof), ***(Marquee Exhibit C).***

**Exhibit D.**   Liberty Mutual's August 27, 2025 false response to IDOI, ***(Marquee Exhibit D).***

**Exhibit E.**   State Farm insurance quote citing Liberty CLUE entry as high-risk (August 4, 2025).

**Exhibit F.**   Third-party evidence/ adversity (employment retaliation, healthcare denial, PE licensure delay, federal background check, regulatory protectionism, emails).

**Exhibit G.**   Plaintiff's actuarial analysis and research showing industry waste.

**Exhibit H.**   Enterprise map and analysis of financial flows showing coordination.

**Exhibit I.**   Spirometry testing showing 6.5% lung function decline (Aug. 2024 vs June 2025).

**Exhibit J.**   VOC testing confirming toxicity from August 2025 (photos of meter).

**Exhibit K.**   BJB's July 16, 2025 Rent Bureau delinquency report (provided to Becovic Mgmt).

**Exhibit L.**   LexisNexis September 15, 2025 CLUE report excerpts with inaccuracies.

**Exhibit M.**    Experian's October 7, 2025 traditional credit report.

**Exhibit N.**    CCS text demand for $18 back-dated premium (August 30, 2025).

**Exhibit O.**    Hunter Warfield email demand for $1,607 rent (September 9, 2025).

**Exhibit P.**    Certified dispute notices to Experian, LexisNexis, CCS, Hunter Warfield (September 24, 2025).

**Exhibit Q.**    Plaintiff's June 2025 rent withholding letter and emails to BJB's Ickow.

**Exhibit R.**    Plaintiff's July 21, 2025 email to BJB's Jeffrey Ickow notifying of the electrical hazards, and *"no harm, no foul"* offer.

**Exhibit S.**    LexisNexis returned September 24 rebuttal envelope (refused reinvestigation).

**Exhibit T.**    June - July 2025 conversations between Plaintiff and Liberty Adjuster Paris Tate regarding the claim (emails, voicemail).

**Exhibit U.**    BJB's Isidro maintenance portal email documenting the sewage leak (June 16, 2025).

**Exhibit V.**    Plaintiff's July 2025 FOIA request for building permit history to the Chicago Department of Buildings.

**Exhibit W.**    Liberty Mutual's August 15, 2025 denial letter authored by Veronika Grant and Plaintiff's rebuttal (emailed on August 18, 2025).

**Exhibit X.**    Liberty's portal manipulations (August 2025).

**Exhibit Y.**    BJB's portal manipulations (August 2025).

**Exhibit Z.**   Chicago Department of Buildings Citation to BJB for refusing inspection (September 9, 2025) and Plaintiff's 311 electrical complaint (Aug. 15, 2026).

**Exhibit AA.**   Out-of-pocket expenses documentation (moving, medical denials, etc.).

**Exhibit BB.**   Plaintiff's September 16, 2025 letter to LexisNexis requesting the CLUE report.

**Exhibit CC.**   Plaintiff's July 25, 2025 *"cooperation"* email to Liberty Mutual's Paris Tate requesting the claim file.

**Exhibit DD.**   BJB's Crystal Perez's July - September 2025 communications with Plaintiff.

**Exhibit EE.**   BJB's July 14 cure/ eviction notice and Plaintiff's $1,607 payment to BJB on July 19, 2025 (receipt).

**Exhibit FF.**   Plaintiff's July 26, 2025 certified Notice to Vacate to BJB.

**Exhibit GG.**   Plaintiff's July 26, 2025 certified Request for Claim File to Liberty.

**Exhibit HH.**   Becovic Management communications with Plaintiff (July 2025).

**Exhibit II.**   City of Chicago 2020 ALJ Ruling and fine against BJB.

**Exhibit JJ.**   SEIU Local 73 Contract Ratification Email (August 14, 2025).

**Exhibit KK.**   Liberty Mutual's October 26, 2025 Mailing (Envelope with USPS Stamp).

## XV. VERIFICATION

**A.** I, Brian Alan Crofoot, being first duly sworn on oath, state that I have read the foregoing Complaint and that the statements contained therein are true and correct to the best of my knowledge, information, and belief.

**B. Representations to the Court:** Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint:

**1.** Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

**2.** Is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

**3.** The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**4.** The Complaint otherwise complies with the requirements of Rule 11.

_____, this ____11____ day of _____March_____, 2026.
BRIAN ALAN CROFOOT, Plaintiff

## XVI. VERIFICATION OF CALCULATIONS

**A.** I, Brian Alan Crofoot, Engineer-in-Training and Cook County Environmental Engineer (Badge #161), hereby verify that I have personally and independently researched, calculated, and reviewed all mathematical analyses presented in this Complaint, including:

    **a.** **Exhibits G and H:** energy (money) efficiency and actuarial analysis

    **b.** All component analyses, financial, energy flows.

**B.** As a professional engineer candidate, with a Masters degree in Environmental Engineering, I am trained in systems analysis, mass balance, and energy flow calculations. I applied standard engineering methodology to the financial flows documented in this case.

**C.** I have verified each calculation multiple times and am prepared to explain the derivation and reproduce the analysis for this Court.

**D.** The mathematical framework presented herein follows established principles of standard engineering systems analysis and mass balance.

I declare under penalty of perjury that the analysis and calculations contained in this Complaint are accurate to the best of my knowledge, training, and professional expertise.

**Dated:** March 11, 2026

Brian Alan Crofoot, M.E., Engineer-in-Training