**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN ALAN CROFOOT | ) | |
| | ) | |
| Plaintiff, | ) | Case Number 1:26-cv-00672 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| LIBERTY MUTUAL PERSONAL | ) | |
| INSURANCE COMPANY, | ) | |
| BJB PROPERTIES, INC., | ) | |
| LEXISNEXIS RISK SOLUTIONS, INC., | ) | |
| EXPERIAN INFORATION | ) | |
| SOLUTIONS, INC., | ) | |
| HUNTER WARFIELD, INC., AND | ) | |
| CREDIT CONTROL SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## LIBERTY MUTUAL'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

NOW COMES the Defendant, LIBERTY MUTUAL PERSONAL INSURANCE

COMPANY ("Liberty Mutual"), by and through its attorneys, HeplerBroom, LLC, and, pursuant

to Fed. R. Civ. P. 12(b)(6), hereby moves to dismiss the amended complaint (Dkt. 31) of Plaintiff,

BRIAN CROFOOT ("Plaintiff"), and in support of the same, states as follows:

## INTRODUCTION

Plaintiff's amended complaint attempts to transform a below-deductible water leak claim

on a policy of renter's insurance to a massive and wide-ranging illicit conspiracy between six

defendants with damages in excess of $8,300,000 per defendant. (Dkt. 31, pgs. 22, 37). His filings

make claims of a vast conspiracy between, among other entities, his landlord, his former insurance

company, a debt collection service, and a legal research database. Despite Plaintiff's amended

complaint asserting one-hundred and forty-five (145) numbered allegations, specific and

1

substantive factual allegations are sparse in these voluminous pleadings. Instead, the bulk of the materials are unsubstantiated and conclusory claims that seek to portray a denial of a below-deductible water leak claim as a nefarious and coordinated step in a simultaneously intricate and sparsely detailed scheme to damage Plaintiff's reputational and personal interests.

Plaintiff's frustration with the outcome of his June 16, 2025 renter's insurance claim with Liberty Mutual is self-evident from his pleadings, as is his frustration that his subsequent rent dispute with his landlord and other issues became part of his consumer record in the modern digital age, with apparent negative consequences. But it does not change the fact that his amended complaint as pled is improper and unsubstantiated, meaning that it cannot state a claim as to any of the eight causes of action asserted therein. Defendant Liberty Mutual therefore requests that this Court dismiss the amended complaint with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

In his pleadings, Plaintiff asserts broad claims that six separate defendants conspired to subject him to habitability issues, adverse reporting, and economic and personal consequences. His initial complaint to this effect was so overbroad and voluminous in nature that the Court dismissed it *sua sponte* (Dkt. 29), leading to a somewhat more pared back reiteration of these allegations in his amended complaint (Dkt. 31). Plaintiff asserts that these alleged malicious acts by the various defendants constituted a "unified enterprise pursuing … suppressing Plaintiff's claim and extracting payments through coordinated denial, adverse reporting, and collection." (Dkt. 31, pg. 6). In regard to Liberty Mutual specifically, Plaintiff alleges that Liberty Mutual's denial of his insurance claim, a claim which was valued at a sub-deductible threshold, constituted the inception of this alleged conspiracy. (Dkt. 31, pg. 7). Plaintiff erroneously asserts that Liberty Mutual reporting the process and outcome of his denied claim to the ISO system in the customary

2

and routine fashion for such claims, somehow constituted a fraudulent action and breach of confidentiality, which a number of otherwise unrelated defendants then allegedly used to pursue a supposed vendetta against Plaintiff by means of using the claim as part of a number of consumer reporting activities from which they allegedly derived an unspecified profit of some kind. (Dkt. 31, pgs. 7-8). Plaintiff further asserts, without substantiation, that these various separate entities reaching the same conclusion about the outcome of his insurance claim and the subsequent residential dispute stemming from his own desire to withhold his rent over it could only have constituted an "information sharing conspiracy," rather than the outcome of his claim and his disputes arising from it simply being plain to a reasonable audience. (Dkt. 31, pg. 11).

Plaintiff's verbiage in presenting these allegations is extreme and inflammatory, but the substance is thin. Namely he asserts, without substantiation, that Liberty Mutual shared certain laboratory testing information Plaintiff obtained with Plaintiff's landlord, which he claims then led the entities to adopt "choreographed parroting" in regard to their positions on his claim. (Dkt. 31, pgs. 11-12). Plaintiff's "proof" of this assertion is that both Liberty Mutual and Plaintiff's landlord reached the same conclusion in regard to his claim, namely that the claim involved a water leak rather than a raw sewage leak. (Dkt. 31, pgs. 11-12). Plaintiff goes on to reiterate his own unsupported assertion of collusion between the defendants regarding his claim as unvarnished truth and Liberty Mutual's denial of his position and assertion of proprietary work product privilege on this issue as further allegedly fraudulent activity. (Dkt. 31, pgs. 12-13). Again, though, Plaintiff's only specific assertions of acts and omissions by Liberty Mutual in this respect are that Liberty Mutual denied his claim and arguments, asserted proprietary privilege for claim materials, and denied his accusations of collusion between Liberty Mutual and Plaintiff's landlord in regard to the claim. (Dkt. 31, pgs. 13, 20, 28). The only further specific allegations Plaintiff levies against

Liberty Mutual in this matter are that Liberty Mutual reported the claim to LexisNexis' ISO system (Dkt. 31, pg. 14), which, contrary to Plaintiff's assertions, is a perfectly legal and customary process for such claims, that Liberty Mutual erroneously sent a copy of its denial letter of his claim to his formerly insured address, (Dkt. 31, pg. 16), and that Liberty Mutual attempted to collect $18.16 that Plaintiff owed for an unpaid premium. (Dkt. 31, pg. 25); (Dkt. 32, pg. 20).

None of these actions by Liberty Mutual, despite Plaintiff's grand, conspiratorial statements and innuendos in presenting them, constitute well-pled bases for any causes of action, let alone the outlandish counts and sweeping illicit conspiracy and counts that Plaintiff's amended complaint asserts. Accordingly, his amended complaint should be dismissed with prejudice by this Court for the reasons that follow.

## **STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) accepts as true all well-pleaded allegations of the complaint and draws reasonable inferences therefrom in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a court must dismiss any claim where the Plaintiff cannot prove any set of facts to set for the essential elements of a cause of action upon which relief can be granted. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); see also Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief").

4

The court need not accept as true "statements of law or unsupported conclusory factual allegations." *Lax v. Mayorkas*, 20 F. 4th 1178, 1181 (7th Cir. 2021) (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs.*, LLC, 931 F.3d 610, 614 (7th Cir. 2019) (quoting [*4] *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 679).

## LEGAL ARGUMENT

Plaintiff's amended complaint against Liberty Mutual should be dismissed. It is deficient as a pleadings document, since it is unclear as to what Liberty Mutual allegedly did to contribute to the supposed conspiracy against Plaintiff beyond deny his claim, report it to ISO, erroneously send a mailing to Plaintiff's old address, and attempt to collect an $18.16 outstanding premium. Furthermore, the amended complaint must be dismissed because it fails to assert a bare minimum of factual allegations in support of any of its far-fetched, conspiratorial counts against Liberty Mutual. Rather, the amended complaint is instead composed almost entirely of conclusory, conspiratorial allegations, which are not a sufficient basis upon which to state a claim.

I. **Plaintiff's Amended Complaint Fails to Meet The General Pleading Standards of Fed. R. Civ. P. 8 and 12.**

As an initial matter, Plaintiff's amended complaint, namely Counts II, III, V, VI, VII, and VIII thereof, fails to meet the essential pleading requirements imposed by the Federal Rules of Civil Procedure, which is itself a sufficient basis for the Court to dismiss these counts of the amended complaint. Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that fails "to state a claim upon which relief can be granted," (Fed. R. Civ. P. 12(b)(6)) which Federal Rule of Civil Procedure 8 expounds upon by requiring that pleadings submitted to federal court contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494 (7th Cir. 2025) (quoting Fed. R. Civ. P. 8(a)(2)). This requires the complaint to go "beyond mere speculation or conjecture and provide factual allegations that allow the court to draw a reasonable inference," of liability. *Wertymer*, 142 F.4th at 495. This requires factual allegations that state a claim for relief that is plausible on its face such that a court can draw this inference without needing to rely on speculation or the mere possibility of misconduct. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. In sum, a plaintiff cannot meet federal pleadings requirements simply "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins* v. *Silverstein*, 939 F.2d 463, 466-67 (7th Cir. 1991).

Plaintiff's amended complaint does not meet the standards set by Federal Rule of Civil Procedure 8. Though pared back from its initial iteration, the complaint is still made up of 145 numbered allegations, most of which simply assert generalist, conspiratorial invective towards the Defendants, interposed here and there with legal terms such as "racketeering," and "fraud." Utilizing legalistic language does not bolster a pleading made up of mere conspiratorial conclusions and indeed is the definition of attempting to salvage such a pleading by asserting the "labels and conclusions," and "speculation or conjecture," that are the hallmarks of a legally

6

deficient pleading under Rule 8. *Wertymer*, 142 F. 4th at 494-95; *Twombly*, 550 U.S. at 544. Furthermore, the amended complaint asserts a claim to relief for and entitlement to more than $8,300,000 in damages, but provides no allegations supporting a basis for an award even close to such an amount, only stating that Liberty Mutual and Plaintiff's landlord seemingly stood to save $14,000 apiece by taking their denial positions regarding Plaintiff's claim and residential dispute. (Dkt. 31, pg. 12). The complaint then broadly and baselessly asserts that downstream effects of this claim dispute somehow caused Plaintiff more than $5,000,000 in reputational damage and $3,000,000 in emotional distress without specifying how (Dkt. 31, pgs. 17-18), which Plaintiff then arbitrarily multiplies on a per defendant basis in his request for relief. (Dkt. 31, pg. 37). All told, this is exactly the kind of pleading that Federal Rule of Civil Procedure 8 is designed to bar, a claim with no substantive allegations at issue beyond speculation or the mere possibility of misconduct, utilizing dramatic legalistic labels and conclusions to suggest liability.

### a. Count II: Fair Credit Reporting Act (15 U.S.C. §§ 1681e(b), 1681i, 1681s-2, 1681g, 1681n, and 1681o)

Count II of Plaintiff's amended complaint, in pertinent part concerning Liberty Mutual, alleges that Liberty Mutual furnished incomplete and/or inaccurate information regarding Plaintiff's June 16, 2025 claim to LexisNexis' ISO system without correcting it. (Dkt. 31, pgs. 22-23). Plaintiff asserts this based on § 1681s-2 of the statute, which requires furnishers of information to consumer reporting agencies to present accurate information and correct it if it turns out to be wrong. 15 U.S.C. §§1681s-2(a)(1-3). Plaintiff claims that Liberty Mutual, based on an "Exhibit L" provided alongside his amended complaint, falsely attributed his June 16, 2025 claim to "weather damage" and asserts that, by listing that the claim was not covered, Liberty Mutual was "implying fault or fraud by Plaintiff." (Dkt. 31, pg. 23).

7

However, these allegations are both insufficiently pled as to state a factual claim under this statute and are not legally cognizable. This is because, first, Plaintiff's entire basis in Count II for Liberty Mutual's alleged inaccurate reporting is based on Exhibit L from his voluminous list of exhibits for the amended complaint. A review of Exhibit L, namely of Exhibit L-2 thereto, demonstrates that Liberty Mutual's report regarding Plaintiff's claim does not in fact attribute the cause of loss of his June 16, 2025 claim to "weather," instead listing it as a "water damage" claim, which is consistent with Liberty Mutual's claim investigation's conclusions. (Dkt. 32, pg. 18). The report then further simply states that the claim was closed and no amount was paid on it by Liberty Mutual. (*Id.*) Nowhere in this exhibit does Liberty Mutual provide information falsely attributing Plaintiff's claimed loss to "weather," nor does it state anything regarding fault or fraud thereto on the Plaintiff's part. (*Id.*) Plaintiff's feeling that the report reflected by Exhibit L-2 constituted such a statement is simply not an objective or accurate read of the report itself, nor a sufficient basis for pleading a claim on this basis. Furthermore, as a legal matter, the Northern District of Illinois recognizes that "there is no private right of action under §1681s-2(a)." *Hodge v. NCO Fin. Sys.*, 2014 U.S. Dist. LEXIS 165025, at *3 (N.D. Ill. 2014); *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 967 (N.D. Ill. 2005); 15 U.S.C. § 1681s-2(c)(1). Count II of Plaintiff's amended complaint against Liberty Mutual therefore has no basis in the facts of this matter nor in the law in question, and the Court should dismiss it with prejudice.

**b. Count III: Fair Debt Collection Practices Act (15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g)**

15 U.S.C. §1692 prohibits the utilization of harassment or abuse, false or misleading representations, and unfair practices in debt collection and prescribes the proper process for debt validation thereto.  15 U.S.C. §§1692d-g. However, a plaintiff must demonstrate that a prospective defendant employed one or more of these abusive, misleading, or unfair debt collection practices

8

in compliance with Federal Rules 8 and 12. In regard to Liberty Mutual in this count, Plaintiff's only concrete allegation is that Liberty Mutual employed Credit Control Services to pursue a $18.16 amount owed on an unpaid policy premium. (Dkt. 31, pg. 25); (Dkt. 32, pg. 20).

Plaintiff's amount owed to Liberty Mutual as presented by Credit Control Services on August 30, 2025 in Exhibit N of his amended complaint, however, clearly states that collection efforts will cease in the event of a response in dispute by Plaintiff by October 7, 2025 (Dkt. 32, pg. 20), which Plaintiff presented as per Exhibit P-3 of his amended complaint. (Dkt. 33, pg. 22). Count III asserts that Plaintiff's creditors continued to seek collections following his dispute communications in violation of 15 U.S.C. §1692, but provides no details or further exhibits to substantiate these pleadings. As such, all Plaintiff has done here is establish that he owed a debt to Liberty Mutual which he disputed, and then assert by way of unsubstantiated "labels and conclusions," that Liberty Mutual took further actions to seek payment that supposedly breached the statute in question. *Twombly*, 550 U.S. at 544. Count III of the amended complaint does not demonstrate a plausible violation of the underlying statute by Liberty Mutual and it should therefore be dismissed with prejudice.

### c. Count V: Intentional Infliction of Emotional Distress

Count V of Plaintiff's amended complaint asserts that Liberty Mutual's actions taken in regard to his claim constituted intentional infliction of emotional distress ("IIED") upon him. To prevail on an IIED claim, a plaintiff must demonstrate that (1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *Burks v. Soto*, 2016 U.S. Dist. LEXIS 150829, at *10 (N.D. Ill. 2016); *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010). Negligent or reckless acts by a defendant cannot

support a claim for IIED (*Burks*, 2016 U.S. Dist. LEXIS 150829, at *11), and neither can allegations of actions that amount to insult, indignities, threats, annoyances, etc., on the part of a defendant. *Davenport v. City of Chicago*, 653 F.Supp.2d 885, 895 (N.D. Ill. 2009). Rather, an IIED claim can only be sustained by allegations and circumstances "where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and where the "distress inflicted must be so severe that no reasonable person could be expected to endure it." *Id.* (internal quotations omitted).

Here, Plaintiff has not sufficiently alleged any of the necessary elements for an IIED claim. He once again states the legal buzzwords utilized in the standard for IIED claims to attempt to bolster his allegations on this count but substantively merely asserts that the defendants subjected him to a risk of hazards in his residence due to denying his claim. (Dkt. 31, pg. 29). Plaintiff claims that the defendants' conclusions that his residential unit remained safe despite the water main leak in his building amounted to extreme and outrageous conduct because he subjectively felt otherwise in regard to the nature of the leak and corresponding safety of the premises. (Dkt. 31, pg. 29). However, whether allegations truly assert extreme and outrageous conduct on the part of a defendant is "an objective inquiry that looks to 'all the facts and circumstances of a particular case.'" *Gross v. Chapman*, 475 F. Supp. 3d 858, 864 (N.D. Ill. 2020) (quoting *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003) (internal quotations omitted). Nothing in Plaintiff's allegations for IIED in his amended complaint demonstrate anything other than that Liberty Mutual, after performing an objective claim investigation of Plaintiff's residence unit, concluded that it had not been subject to a sewage leak, differing with Plaintiff's personal claims on the issue. Plaintiff's subjective thoughts on the investigation and frustration with the outcome may be genuinely felt, but they are not an objective assessment as pled, nor a basis for asserting

extreme and outrageous conduct by Liberty Mutual. Count V is therefore a count based on generalist conclusions unsupported by specific facts, and should be dismissed with prejudice.

### d. Count VI: Illinois Insurance Information and Privacy Protection Act (IIPPA) (215 ILCS 5/1009 & 1014)

Count VI of Plaintiff's amended complaint alleges that Liberty Mutual failed to disclose claim materials to Plaintiff upon request in violation of 215 ILCS 5/1009 and impermissibly disclosed claim file materials to Plaintiff's landlord in violation of 215 ILCS 5/1014. (Dkt. 31, pgs. 30-31). However, Plaintiff makes no specific allegation of wrongdoing against Liberty Mutual in these pleadings. Rather, his only substantive allegations as part of this count are that he made a request for materials by way of reference to Exhibit GG of his amended complaint and that his landlord's communications to him regarding his unit's alleged condition, as illustrated by Exhibit C of his original complaint, referred to Liberty Mutual's denial of his claim. (Dkt. 33, pg. 14; Dkt. 14, pg. 7).

These allegations and the exhibits they refer to do not constitute substantive allegations of any subsequent unauthorized disclosure or wrongful withholding of information by Liberty Mutual. Rather, they simply point to a third party's reference to Plaintiff's claim, without specification or confirmation of whether that reference was based upon an actual disclosure of information by Liberty Mutual, let alone that said information, if disclosed, was confidential, to infer that Liberty Mutual must have therefore disclosed confidential information. They also assert that, because Plaintiff made a request for certain claim information, that Liberty Mutual must have thereafter failed to produce the materials and must have lacked any privilege or statutory basis for doing so. Premised as it is on the suggestion and implication of these critical missing allegations of fact, but failing to actually substantive assert them, Count VI of Plaintiff's amended complaint relies on inferences, speculation, or the mere possibility of misconduct, which federal pleadings

may not do. *Iqbal*, 556 U.S. at 678-79. It should therefore be dismissed by this Court with prejudice.

### e. Count VII: Chicago Residential Landlord Tenant Ordinance (RLTO) (Municipal Code of Chicago §§ 5-12-070, 110(f), & 150)

Count VII of Plaintiff's amended complaint asserts that his landlord violated the Chicago Municipal Code's Habitability and Retaliation provisions. However, in regard to Liberty Mutual, it merely conclusively asserts that Liberty Mutual shared confidential claim information with Plaintiff's landlord and therefore, must have been a coordinated participant to restrict Plaintiff's exercise of his renter's rights. (Dkt. 31, pg. 32-33). However, Count VII's only substantive basis for this assertion is, as with the disclosure allegation of Count VI, the fact that Plaintiff's landlord referred to the outcome of Plaintiff's claim with Liberty Mutual in a correspondence to Plaintiff. (Dkt. 14, pg. 7). As noted above, this assertion by reference to a statement by a third party does not directly and substantively allege either that a) Liberty Mutual actually disclosed any information to said third party or b) that, if Liberty Mutual did make such a disclosure, that said information was actually confidential. As such, Count VII of the amended complaint, like Count VI, is premised on mere inferences, speculation, and the possibility of misconduct, meaning that it is an invalidly pled count that should be dismissed with prejudice.

### f. Count VIII: Unjust Enrichment

Unjust enrichment is an equitable remedy whereby a plaintiff must allege that a defendant has unjustly obtained a benefit at the plaintiff's detriment, the retention of which violates fundamental principles of justice and equity. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022). A party may plead breach of contract and unjust enrichment claims in the alternative, pursuant to Federal Rule of Civil Procedure 8(a)(3). *Id*. at 886-87. However, where the existence of a contract between the parties is undisputed, an unjust enrichment claim will seldom

survive a motion to dismiss. *Id*. at 887. *See, e.g., Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016) (unjust enrichment inapplicable where the parties' relationship governed by implied contract).

Here, Plaintiff has curiously sued Liberty Mutual for unjust enrichment in regard to its receipt of his paid policy premiums due to the fact that Liberty Mutual subsequently denied his claim and allegedly contributed to unclear further losses by Plaintiff. (Dkt. 31, pg. 34-35). However, his count for unjust enrichment is, as noted above, fatally compromised by the fact that a contract, Plaintiff's insurance policy, undisputedly exists in regard to this matter and the parties' relationship. Plaintiff ought to have brought a claim for breach of contract against Liberty Mutual instead of unjust enrichment. *Gociman*, 41 F.4th at 887. Such an unjust enrichment claim may only "survive a motion to dismiss when the validity or the scope of the contract is difficult to determine, of if the claim at issue falls outside the contract. *Id*. Such is clearly not the case here. Plaintiff clearly feels, irrespective of Liberty Mutual's bases in the policy terms for doing so, that Liberty Mutual improperly declined to cover his claim. (Dkt. 31, pg. 34-35). This should be a breach of contract count and Count VIII is therefore not legally cognizable and should be dismissed.

II.     **Plaintiff's Amended Complaint Fails To Allege Particular Facts As To Satisfy Fed. R. Civ. P. 9(b).**

Additionally, Plaintiff's amended complaint and its counts thereto which bring and involve allegations of fraud, namely Counts I and IV, fail to meet the requisite heightened pleadings standards of Federal Rule of Civil Procedure 9. Federal Rule 9, specifically Rule 9(b), provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Conclusory allegations of fraud will not suffice.

   a.  **Count I: RICO (18 U.S.C. §1962(c) and §1962(d))**

13

18 U.S.C. §1962(c) and (d) make it unlawful to conspire to engage in and engage in a pattern of racketeering activity affecting interstate commerce through the conduct of an enterprise. 18 U.S.C. §1962(c); §1962(d). A RICO plaintiff must allege with particularity the "1) conduct; 2) of an enterprise; 3) through a pattern 4) of racketeering activity." *Richmond v. Nationwide Cassel, L.P.*, 52 F.3d 640, 644 (7th Cir. 1995). To do so, they must demonstrate the commission of acts that are indictable under certain federal statues as prescribed by §1961(1)(B) and show the commission of at least two such acts within ten years. 18 U.S.C. §§ 1961(1)(B); 1961(5). While two predicate acts are necessary, they may not be sufficient to establish a pattern of racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 299, 237 (1989). To establish a pattern, a plaintiff must show that the predicate acts are related, extend over a substantial amount of time and "amount to or pose a threat of continued criminal activity," a "continuity plus relationship" test. *Id*. at 239, 241-42. Courts stringently apply the Rule 9(b) particularity standard for such claims and plaintiffs "must do more than outline a scheme and make loose references to mailings and telephone calls." *R.E. Davis. Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1516 (N.D. Ill. 1990). Furthermore, "the Seventh Circuit has repeatedly stressed the limited availability of civil RICO liability and confirmed that RICO does not transform "garden-variety" state-court business disputes involving allegations of fraud into federal lawsuits for treble damages." *Sindelar v. Essig*, 2026 U.S. Dist. LEXIS 6694, at *9.

Here, Plaintiff generically asserts wire and mail fraud racketeering activity between the defendants to this action based around his denied insurance claim. He vaguely attributes this to an "enterprise," but does not allege any related acts by Liberty Mutual with specificity beyond (1) denying his claim and his allegations of unauthorized disclosure, (2) reporting his claim to the ISO system, and (3) mistakenly sending a copy of the denial letter to Plaintiff's former address. He

14

asserts that Liberty Mutual colluded with Plaintiff's landlord regarding his claim but does not provide any basis for that beyond speculative conclusions. None of this establishes Liberty Mutual's operation of a continuous pattern of activity that demonstrably affected interstate commerce as §1962(c) requires. Count I consists of conclusory and speculative claims and relies on legal labels and recitations of "conspiracy" and an "enterprise," to sustain itself. It is therefore an insufficient pleading under Federal Rules 8 and 9 and should be dismissed with prejudice.

### b. Count IV: Illinois Consumer Fraud Act (815 ILCS 505/2)

Illinois Consumer Fraud Act claims must allege five elements: "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Toney v. Kinsch*, 2012 U.S. Dist. LEXIS 21126, at *12 (N.D. Ill. 2012) (internal quotations omitted). Most pertinent is establishing the unfair act or practice, which can be alleged based on "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers." *Id*. at *13.

Plaintiff's complaint does not present specific, substantive allegations of Liberty Mutual acting in such an unfair fashion that caused Plaintiff appreciable damages. The allegations at issue of (1) denying Plaintiff's claim and allegations of unauthorized disclosure, (2) asserting a proprietary privilege, (3) ISO reporting, and (4) premium collection, do not violate any cited predicate statute or public policy, demonstrate unscrupulous behavior, or cause substantial injury. Plaintiff only repeats his unsubstantiated and outlandish $8,300,000 damages claim without an underlying basis. Count IV thus does not state a claim with particularity and should be dismissed.

15

WHEREFORE, the Defendant, LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, respectfully requests that this Honorable Court grant the instant motion, dismiss the Plaintiff's amended complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and for any such relief as this Honorable Court deems reasonable and just.

Respectfully submitted,

**LIBERTY MUTUAL PERSONAL INSURANCE COMPANY**

By: _____

One of its Attorneys

James P. DuChateau, Esq.
Brandt T. Miller, Esq.
HEPLER BROOM, LLC
70 W. Madison St., Ste. 2600
Chicago, Illinois 60602
Phone No. (312) 230-9100
Email: james.duchateau@heplerbroom.com
Email: brandt.miller@heplerbroom.com
**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I, Brandt T. Miller, hereby certify that on May 11, 2026 a true and correct copy of *Liberty Mutual's Motion To Dismiss Plaintiff's Amended Complaint* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the all counsel of record who have heretofore appeared in this matter.

/s/ Brandt T. Miller

16