

BC

FILED
5/12/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MAM

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN ALAN CROFOOT, | ) | **Case No.:** 1:26-cv-00672 |
| *Plaintiff,* | ) | |
| | ) | **Judge:** Jeffrey I. Cummings |
| v. | ) | |
| | ) | |
| LIBERTY MUTUAL PERSONAL | ) | |
| INSURANCE COMPANY, ET AL. | ) | |
| *Defendants.* | ) | |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO

# LIBERTY MUTUAL'S MOTION TO DISMISS

## I. TO THE HONORABLE JUDGE AND JURY:

Plaintiff Brian Alan Crofoot, appearing pro se, respectfully submits this opposition to

Defendant Liberty Mutual Personal Insurance Company's Motion to Dismiss Plaintiff's

Amended Complaint (Dkt. 36). Plaintiff properly states claims, opposes dismissal, and requests

a trial by jury on all triable issues.

## Table of Contents

**II. INTRODUCTION**     **2**

**III. LEGAL STANDARD**     **3**

**IV. ARGUMENTS**     **3**

Count I (RICO) Is Properly Pled With Documentary Evidence Defendant Ignores     3

Count II (FCRA) States Valid Claim — Defendant Confuses Subsections and Ignores

Furnisher Liability                                                          6

Count III (FDCPA) Is Properly Pled — Defendant Misrepresents Facts and Legal Standard   7

Count IV (ICFA) Specifically Alleges Intent via Circular Trap               8

Count V (IIED) Survives When Viewed as Coordinated Enterprise Conduct        9

Count VI (IIPPA) Is Properly Pled — Defendant Violated Statutory Duty and GLBA        10

Count VII (RLTO) Applies Primarily to Co-Defendant BJB; Liberty's Role Shown

    Through Coordination                                                  11

Count VIII (Unjust Enrichment) Survives Despite Contract — Illegal Conduct

    Falls Outside Contract                                                12

Regulatory Capture Is Not Speculation — It Is Being Litigated with Confession        13

Fruit of the Poisonous Tree — All Defendants' Acts Derive From Original Violation    14

**V. CONCLUSION**                                                           **15**

**VI. CERTIFICATE OF SERVICE**                                              **15**

## II. INTRODUCTION

Defendant's motion should be denied. Defendant mischaracterizes Plaintiff's well-documented claims, confuses statutory subsections, misrepresents material facts regarding debt collection, and ignores multiple statutory violations including the Gramm-Leach-Bliley Act. Plaintiff has pled each count with sufficient factual support — including 35 exhibits — to state plausible claims for relief.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) accepts as true all well-pled allegations and draws reasonable inferences in plaintiff's favor, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). At this stage, Plaintiff need not prove his case, only plead sufficient facts to state claims that are plausible on their face, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Further, Erickson v. Pardus, 551 U.S. 89 (2007), reaffirms pro se complaints are entitled to liberal construction.

## IV. ARGUMENTS

### Count I (RICO) Is Properly Pled With Documentary Evidence Defendant Ignores

Defendant claims Plaintiff "generically asserts" RICO violations and "vaguely attributes" conduct to an enterprise (Dkt. 36, pgs. 14-15). This mischaracterizes Plaintiff's extensively documented RICO claim.

### 1. Enterprise Is Proven by Exhibits

**Exhibit C:** BJB Properties' General Counsel Kathleen Barry Boychuck's July 25, 2025 letter quotes Defendant's claim denial details verbatim **(Exhibit D)**, proving unauthorized information sharing that establishes enterprise coordination between Defendant and co-defendant BJB (Dkt. 14, pg. 7). Defendant does not substantively address this smoking-gun evidence, instead reducing it to parties reaching "the same conclusion" (Dkt. 36, pg. 3). But Defendant did not explain HOW BJB obtained Defendant's claim details to quote them verbatim absent unauthorized disclosure.

**Exhibit E:** Industry insider admission by State Farm agent: "It's a dumb rule in our industry. Claims follow the person, not the property" (Dkt. 32, pg. 16). This proves Defendant KNEW reporting Plaintiff's below-deductible claim to CLUE/ ISO system would personally harm Plaintiff's future insurability, yet proceeded anyway — establishing enterprise intent to harm through coordinated reporting and debt collection.

**Exhibit G:** Plaintiff's actuarial analysis shows that insurers waste $6B - $12B annually by not verifying building permits upfront. Proving systemic harm (Dkt. 24). Defendant does not mention this exhibit.

**Exhibit H:** Financial flows analysis demonstrates coordinated benefit from denial, with system efficiency calculation $\eta$ = -213% proving impossibility without coordination. Defendant does not mention this exhibit.

## 2. Pattern Is Established by Strict Liability Violations

Plaintiff's RICO predicates are violations of consumer protection statutes: ICFA 815 ILCS 505/2; IIPPA 215 ILCS 5/1009, 2014; RLTO, Chicago Mun. Code § 5-12-070; FCRA §1681s-2(b); and FDCPA §1692e. They are strict liability statutes requiring no proof of intent. This distinguishes Plaintiff's RICO from typical cases that fail on intent-based mail/wire fraud predicates. Each defendant participated in more than two closely related acts.

**Exhibit N:** LexisNexis returned Plaintiff's dispute envelope unopened, proving failure to reinvestigate per FCRA (Dkt. 32, pg. 19). This is not "generic" mail fraud as Defendant suggests — it is documented strict liability violation. **Exhibit D** written by Liberty's April Sandoval

refused reinvestigation transmitted to the IDOI on August 27, 2025, parrotting Boychuck.

**Exhibits CC, FF, GG, P, R:** Certified disputes sent July - September 24, 2025 to all defendants, establishing timeline (Dkt. 33, pgs. 8-27). Multiple violations across multiple defendants over six months constitute pattern of racketeering activity.

### 3. Interstate Commerce Requirement Met

Fraud is any unlawful act conducted during the course of an economic transaction. The violations occurred via the mail and wires.

Defendant's own agents and employees conducted business from other states. Credit reporting systems (CLUE, LexisNexis ISO; Experian Rent Bureau) and debt collection communications operate via interstate wire and mail systems. This element is undisputed.

### 4. Defendant's Silence on Documentary Evidence

Defendant attacks Plaintiff's RICO as "generic" and "vague" while studiously avoiding the exhibits that prove enterprise, pattern, and predicate acts. This silence reflects inability to refute evidence, not deficiency in pleading.

**Count I survives.**

---

## Count II (FCRA) States Valid Claim — Defendant Confuses Subsections and Ignores Furnisher Liability

Defendant's FCRA argument fails on two independent grounds.

### 1. Defendant Attacks Wrong Subsection

Defendant argues "there is no private right of action under §1681s-2(a)" (Dkt. 36, pg. 8, citing Hodge v. NCO Fin. Sys., 2014 U.S. Dist. LEXIS 165025). This is correct for subsection (a). But Plaintiff's FCRA claim is based on 15 U.S.C. §1681s-2(b) — the duty to investigate disputes — which DOES provide a private right of action. Subsection (a) governs furnisher accuracy obligations with no private right. Subsection (b) governs investigation of consumer disputes and HAS private right. The cases Defendant cites (Hodge, Rollins) distinguish these subsections, confirming §1681s-2(b)'s private right of action.

Plaintiff sent multiple certified disputes, July 8, 26, August 18, and September 24, 2025 **(Exhibit P)**. Defendant failed to investigate, as proven by **Exhibit N** showing LexisNexis returned dispute envelope unopened. On August 27, 2025, Defendant's April Sandoval refused to investigate. Instead, Sandoval certified Boychuck's claims **(Exhibit D)**. That is the §1681s-2(b) violation — failure to investigate disputes.

Defendant's confusion of subsections is not grounds for dismissal.

### 2. Furnisher Liability for Initial False Reporting

Defendant ignores that they furnished false information to LexisNexis ISO system in the first instance. **Exhibit L-2** shows Defendant reported Plaintiff's claim with inaccurate characterization, (Dkt. 32, pg. 18).

**Exhibit E** proves Defendant knew this reporting would personally harm Plaintiff: Industry insider admits "Claims follow the person, not the property" — establishing Defendant's knowledge that below-deductible claim reporting would damage Plaintiff's insurability record despite being unrelated to Plaintiff's conduct.

Both the initial furnishing of false/harmful information AND the subsequent failure to investigate after dispute constitute FCRA violations.

**Count II survives on both grounds.**

---

### Count III (FDCPA) Is Properly Pled — Defendant Misrepresents Facts and Legal Standard

Defendant claims Credit Control Services "would cease collection" per Exhibit N's, October 7, 2025 deadline and that Plaintiff provides "no details or further exhibits to substantiate" continued collection (Dkt. 36, pg. 9). Both assertions are wrong.

1. **Factual Misrepresentation**

Reality contradicts Defendant's representation:

First, CCS continued collection efforts after Plaintiff's October 7, 2025 dispute and only ceased after Plaintiff filed this lawsuit in January 2026. CCS never sent written notice of cessation as required by 15 U.S.C. §1692g.

Second, co-defendant Hunter Warfield (collecting for co-defendant BJB) continues asserting Plaintiff owes rent debt despite Plaintiff's September 24, 2025 dispute (Exhibit P). Discovery will reveal complete timeline of Defendant's and CCS's communications proving continued collection violations.

## 2. Legal Standard Error

Defendant demands "details or further exhibits to substantiate" continued collection. This mistakes the legal standard. At the motion to dismiss stage, the question is whether Plaintiff has pled sufficient facts to state a claim — not whether he has introduced all evidence. Plaintiff alleges: (1) Defendant employed CCS to collect $18.16; (2) Plaintiff disputed per Exhibit P; (3) collection continued in violation of FDCPA. These allegations, if true, state a claim under 15 U.S.C. §1692e.

Defendant cannot dismiss based on what SHOULD have happened per Exhibit N while ignoring what ACTUALLY happened per Plaintiff's well-pled allegations.

**Count III survives.**

---

## Count IV (ICFA) Specifically Alleges Intent via Circular Trap

Defendant claims Plaintiff provides no specific ICFA allegations (Dkt. 36, pg. 15). Violations of consumer protection statutes are violations of the ICFA. Additionally, this ignores Complaint ¶¶110-112, which detail the "circular trap" executed with intent.

**The Circular Trap Structure:**

**Step 1:** Defendants mischaracterized Plaintiff's professional environmental assessment (conducted by licensed Environmental Engineer with Cook County Badge #161, and DHS/FEMA Federal Emergency Response Official credentials) as mere "tenant complaints" (¶111).

**Step 2:** Defendants denied all remedies, forcing Plaintiff to choose: accept ongoing harm or litigate to obtain remedy (¶111).

**Step 3:** When Plaintiff litigated to obtain remedy Defendants denied, Defendants used the compelled litigation as "proof" of Plaintiff's dishonesty (¶111).

**Result:** Consumer harmed regardless of choice made.

Do not litigate → harm continues. Do litigate → labeled "litigious/dishonest." This structural unfairness with no escape constitutes unfair practice under ICFA, 815 ILCS 505/2.

**Intent Is Specifically Alleged:**

"The circular trap was executed with full knowledge of its illegality. This knowing continuation after notice demonstrates that the harm was not accidental but intentional and coordinated, warranting punitive damages under ICFA," (¶112).

Defendant's claim that Plaintiff provides no "specific allegations" ignores three paragraphs detailing the circular trap's structure, execution, and intent.

**Count IV survives.**

_____


### Count V (IIED) Survives When Viewed as Coordinated Enterprise Conduct

Defendant argues Liberty's acts alone do not constitute "extreme and outrageous" conduct (Dkt. 36, pgs. 9-11). But Plaintiff alleges coordinated conduct by six defendants over six months, which must be viewed as enterprise activity, not isolated acts.

**The coordinated enterprise conduct includes:**

1. Forced exposure to hazardous living conditions

2. Respiratory function decline (spirometry tests)

3. False credit reporting by multiple defendants

4. Coordinated debt collection harassment

5. Regulatory capture (Exhibit F: government official coordination with defendants)

6. Refusal to investigate legitimate disputes

7. Creation of circular trap with no escape

Viewed collectively as enterprise conduct, this exceeds "bounds of decency" and constitutes at minimum a question for the jury, Davenport v. City of Chicago, 653 F.Supp.2d 885, 895 (N.D. Ill. 2009).

Moreover, this coordination is not speculative — it is the subject of parallel federal litigation. Crofoot v. Cook County, Case No. 1:26-cv-05025 (N.D. Ill., filed April 30, 2026), alleges First Amendment retaliation based on the same **Exhibit F** evidence. Cook County defendants confessed coordination in writing in their final written reprimand to Plaintiff, (May 5, 2026). **Count V survives.**

---

### Count VI (IIPPA) Is Properly Pled — Defendant Violated Statutory Duty and GLBA

Defendant claims Plaintiff "makes no specific allegation" of IIPPA violation (Dkt. 36, pg. 11). False.

**1. Statutory Duty to Provide Claim File**

**Exhibit GG:** Plaintiff requested claim file materials per 215 ILCS 5/1009, which requires insurers to provide claim files within 30 days upon written request (Dkt. 33, pg. 14). Defendant refused, asserting "proprietary privilege" and "work product" protection (Complaint ¶¶15, 37, 43, 44, 49). IIPPA §1009 provides NO exception for "proprietary privilege." Defendant must provide claim file upon request. They didn't. That's the violation.

**2. Gramm-Leach-Bliley Act Violation**

Defendant's MTD ignores Gramm-Leach-Bliley Act (15 U.S.C. §6801 et seq.), which prohibits financial institutions — including insurance companies — from disclosing customer financial information without authorization, 15 U.S.C. §6802.

**Exhibits C & D** proves Defendant disclosed Plaintiff's claim details to BJB Properties without authorization. BJB's Kathleen Boychuck quotes Defendant's claim information verbatim — information she should not possess absent Defendant's unauthorized disclosure in violation of GLBA and IIPPA.

**3. The Contradiction**

Defendant cannot refuse to disclose claim file to Plaintiff under IIPPA §1009 while simultaneously disclosing same information to third party in violation of GLBA and IIPPA §1014 (prohibition on disclosure without authorization). This contradiction proves both violations.

**Count VI survives.**

---

### Count VII (RLTO) Applies Primarily to Co-Defendant BJB; Liberty's Role Shown Through Coordination

Count VII alleges violations of Chicago Residential Landlord Tenant Ordinance primarily by co-defendant BJB Properties. Defendant Liberty's role is shown through coordination evidenced by **Exhibit C** (unauthorized information sharing with BJB) and enterprise participation **(Exhibit D).**

As to Defendant Liberty specifically, Count VII allegations are secondary to the primary RICO, FCRA, FDCPA, ICFA, and IIPPA violations alleged against Liberty. Count VII's allegations

against co-defendant BJB do not require dismissal of the entire complaint.

**Count VII survives.**

_____

### Count VIII (Unjust Enrichment) Survives Despite Contract — Illegal Conduct Falls Outside Contract

Defendant argues unjust enrichment fails because insurance contract exists (Dkt. 36, pgs. 12-13). This ignores Illinois law.

Gociman v. Loyola Univ., 41 F.4th 873, 887 (7th Cir. 2022) recognizes unjust enrichment "may survive a motion to dismiss when...the claim at issue falls outside the contract."

Plaintiff's unjust enrichment claim is based on Defendant's statutory violations separate from the insurance contract:

1. FCRA violations (furnishing false information to LexisNexis, failure to investigate disputes)

2. FDCPA violations (illegal collection practices)

3. GLBA & IIPPA violations (unauthorized disclosure to BJB)

4. IIPPA violations (refusing claim file access)

These illegal acts fall OUTSIDE the insurance contract. They are statutory violations that void Defendant's right to retain premiums collected under contract later breached through illegal Conduct.

Defendant received premiums under contract, then violated multiple consumer protection statutes. Retention of those premiums after illegal conduct constitutes unjust enrichment separate from any contract dispute.

**Count VIII is properly pled in alternative per Fed. R. Civ. P. 8(a)(3) and survives.**

_____

**Regulatory Capture Is Not Speculation — It Is Being Litigated with Confession**

Defendant characterizes Plaintiff's allegations as involving 'regulatory capture' (Dkt. 36, pgs. 2, 6). This phrase does not appear in Plaintiff's complaint. Plaintiff described CONDUCT: government employee (Suzanne Malec-McKenna, ¶64) coordinated with Defendant corporation to retaliate against Plaintiff on March 12, 2026 — the same day Plaintiff filed amended complaint **(Exhibit F).**

Defendant provided the LABEL: 'regulatory capture.' This terminology suggests Defendant's internal legal analysis recognizes the conduct Plaintiff documented AS regulatory capture — i.e., coordination between government official and private entity to suppress citizen's legal rights. Defendant's use of this specific legal term, unprompted by Plaintiff's pleadings, constitutes admission that Defendant understands the conduct alleged as regulatory capture and is concerned about its implications.

Further, this coordination is now subject of parallel federal litigation (Crofoot v. Cook County, Case 1:26-cv-05025) where County defendants confessed coordination in writing, confirming what Defendant now labels 'regulatory capture' is real, documented, and admitted.

---

**Fruit of the Poisonous Tree — All Defendants' Acts Derive From Original Violation**

All defendants' coordinated acts derive from co-defendant BJB's original unlawful concealment of unpermitted HVAC systems that caused sewage contamination in Plaintiff's unit, installed in violation of a Chicago ALJ's 2020 order *(Exhibit II:* Chicago ALJ July 2020 order; *Exhibit V:* FOIA showing no permits; *Marquee Exhibits 1 to 5,* (Dkt 14, pgs. 2-6), photos showing violation)**.**

BJB concealed code violations → Liberty denied claim based on BJB's false representations → BJB retaliated with false rent report → data brokers parroted false reports → collectors pursued invalid debts.

Every subsequent act is fruit of the poisonous tree of BJB's original concealment. This demonstrates: (1) enterprise coordination flowing from initial unlawful act; (2) causation linking all defendants' conduct; (3) joinder propriety under Fed. R. Civ. P. 20(a).

Defendants cannot escape liability by claiming "separate" acts when all conduct derives from and furthers the original violation.

## V. CONCLUSION

Defendant's motion, filed during a stay of proceedings, misconstrues Plaintiff's claims, confuses statutory subsections (§1681s-2(a) vs. (b)), misrepresents material facts (debt collection cessation), ignores statutory violations (GLBA), and dismisses as "conclusory" what is documented in 35 exhibits and being litigated with confession in parallel federal case. All participants in the enterprise are liable for each others' actions. Every count is properly pled with factual support exceeding Rule 8 and Rule 9(b) requirements.

**Defendant's motion should be denied in its entirety.**

*For in the end, law may guide, but conscience is all.*

Respectfully submitted,

/s/ Brian Alan Crofoot, Pro Se

4180 N. Marine Dr, #1501, Chicago, IL 60613

**Phone:** 440-258-0207      **Email:** crofoot.bc@gmail.com      **Dated:** May 12, 2026

---

## VI. CERTIFICATE OF SERVICE

I, Brian Alan Crofoot, hereby certify that on May 12, 2026, a true and correct copy of Plaintiff's Response in Opposition to Liberty Mutual's Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ Brian Alan Crofoot, Pro se