

BC

FILED
8/5/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EK

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN A. CROFOOT, | ) | **Case No.** 1:26-cv-00672 |
| *Plaintiff,* | ) | |
| | ) | **Hon. Judge:** Jeffrey I. Cummings |
| v. | ) | |
| | ) | |
| LIBERTY MUTUAL PERSONAL | ) | |
| INSURANCE COMPANY, ET AL, | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S OPPOSITION TO LEXISNEXIS RISK SOLUTIONS INC.'S

## MOTION TO DISMISS

### I. TO THE HONORABLE JUDGE AND DEFENDANTS:

Plaintiff Brian Alan Crofoot, appearing pro se, respectfully opposes LexisNexis Risk Solutions Inc.'s Motion to Dismiss the First Amended Complaint **(Dkt 50, 51)**.

LexisNexis's Motion to Dismiss largely recycles arguments already addressed in the record and relies on an overreading of *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020). The First Amended Complaint, supported by the extensive exhibits already on the docket, states plausible claims against LexisNexis.

The Motion should be denied.

**TABLE OF CONTENTS**

I. TO THE HONORABLE JUDGE AND DEFENDANTS:                                        1

II. STANDARD OF REVIEW                                                           3

III. ARGUMENTS                                                                   3

IV. PLAINTIFF'S FCRA CLAIMS AGAINST LEXISNEXIS SURVIVE (COUNT 2)                 3

    A. Plaintiff Is Not Challenging the Coverage Decision Itself                3

    B. Denan Does Not Control                                                  4

    C. Plaintiff Has Stated Claims Under §§ 1681i and 1681e(b)                 5

V. PLAINTIFF'S ICFA CLAIM SURVIVES (COUNT 4)                                     7

VI. PLAINTIFF'S RICO CLAIM SURVIVES (COUNT 1)                                    8

    A. Association-in-Fact Enterprise                                          8

    B. LexisNexis's Specific Predicate Acts                                    8

    C. Pattern and Continuity                                                 10

    D. Conclusion on the RICO Claim                                           10

VII. REMAINING ARGUMENTS                                                        11

VIII. CONCLUSION                                                               12

IX. CERTIFICATE OF SERVICE                                                     13

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the entire complaint, not the merits. The Court must accept all well-pleaded facts as true and draw all reasonable inferences in Plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III. ARGUMENTS

## IV. PLAINTIFF'S FCRA CLAIMS AGAINST LEXISNEXIS SURVIVE (COUNT 2)

LexisNexis argues that reporting the claim as *"$0"* was factually accurate because Liberty Mutual denied coverage, and that *Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020), therefore bars Plaintiff's claims under §§ 1681e(b) and 1681i. That argument misapplies *Denan* and mischaracterizes Plaintiff's claims.

### A. Plaintiff Is Not Challenging the Coverage Decision Itself

Plaintiff's claims against LexisNexis are **not** an attempt to overturn Liberty Mutual's coverage denial. Plaintiff is not asking LexisNexis (or this Court) to decide whether Liberty Mutual should have paid the claim under the policy. Challenging a pure coverage determination is not the basis of these claims **(see Count VI: IIPPA)**. Plaintiff's own dispute letters, which are part of the record, did not ask LexisNexis to override Liberty Mutual's coverage decision (approval versus denial; see **Exhibit T-5**). Rather, this case alleges Liberty Mutual intentionally misused the claim process to falsely certify an apartment with a sewage drenched electrical panel above

a gas main in a multi-unit 1914 building as *"perfectly safe"* to assist the landlord, BJB Properties, in concealing the hazard from official records **(Marquee Exhibits).**

Instead, Plaintiff challenges LexisNexis's role in the **coordinated alteration and continued dissemination of a false narrative** after receiving specific notice. The core of the claim is that LexisNexis received detailed notice that the CLUE report had been altered to align with a coordinated false safety narrative, received a formal Administrative Law Judge finding regarding the underlying code violations, and still refused to reinvestigate.

**B. *Denan* Does Not Control**

In *Denan*, the plaintiffs asked a consumer reporting agency to resolve a pure legal dispute about whether certain payday loans were void under state law and tribal immunity doctrines. No court had ruled the debts invalid. The Seventh Circuit held that §§ 1681e(b) and 1681i require factual accuracy, not legal accuracy, and that CRAs are not required to adjudicate unresolved legal defenses. *Id.* at 295–97.

Plaintiff's claims are different. Plaintiff provided LexisNexis with:

- A formal Administrative Law Judge finding that BJB Properties (or its related entity) had violated applicable building codes and failed to obtain required permits, creating the hazardous conditions that gave rise to the claim **(Exhibit BB)**; and

- Specific notice that the CLUE report itself had been altered (the claim description changed from *"weather"* to *"water"* damage between September 8 to 15) to align with the coordinated narrative advanced by Liberty Mutual and BJB Properties **(Exhibit P-2).**

In addition, Liberty Mutual (through the Verisk/A-Plus system) characterized the claim as a **maintenance issue**. That characterization is a factual representation about the nature of the loss, not a simple transcription of Liberty's coverage decision. Plaintiff disputed that characterization and provided supporting documentation.

*Denan* itself recognizes that a formal adjudication changes the analysis: *"If a court had ruled the [loans] invalid and Trans Union had continued to report it as a valid debt, then [plaintiffs] would have grounds for a potential FCRA claim." Id.* at 296. Plaintiff supplied LexisNexis with a formal administrative finding and specific notice of report alteration and mischaracterization. LexisNexis's continued reporting after receiving that information is distinguishable from the pure legal arguments rejected in *Denan.*

**C. Plaintiff Has Stated Claims Under §§ 1681i and 1681e(b)**

Section 1681i requires a consumer reporting agency, upon receiving a dispute, to conduct a reasonable reinvestigation and to delete or modify information that is inaccurate, incomplete, or cannot be verified. 15 U.S.C. § 1681i(a)(1)(A), (a)(5). As part of that duty, LexisNexis was required to consider Plaintiff's specific contention that the CLUE entry had been altered to further a coordinated false narrative, the supporting documentation Plaintiff submitted (including the ALJ finding), and the dispute over the *"maintenance issue"* characterization.

LexisNexis refused even to open the detailed four-page certified rebuttal that identified nineteen specific inaccuracies, stamped the envelope *"Return to Sender,"* and continued reporting the entry without correction or notation of the dispute. That complete failure to engage the statutory reinvestigation process independently states a claim under § 1681i.

The same facts support a claim under § 1681e(b). After receiving notice of the ALJ finding, the weather-to-water alteration, 19 inaccuracies (most is LexisNexis' own data), and the dispute over the *"maintenance issue"* characterization, LexisNexis continued to report the claim without correction or notation of the dispute. These allegations support the inference that LexisNexis's procedures were unreasonable under the circumstances.

On August 4, 2025, State Farm cited the same CLUE entry when quoting renter's insurance for Plaintiff's new residence and deemed him high-risk for at least five years **(Exhibit E,** Dkt 32, pg 15). The State Farm agent expressly described the practice as unfair, writing that *"claims follow the person and not the property."* This constitutes an adverse action under 15 U.S.C. § 1681a(k) and demonstrates both the concrete harm caused by the reporting and LexisNexis's role in disseminating the enterprise's narrative.

Plaintiff has plausibly alleged that he notified LexisNexis of a formal administrative finding and of specific alterations to the CLUE report (received September 23), that LexisNexis refused even to open his detailed rebuttal, and that it continued reporting the items thereafter without noting the disputes. These allegations state claims under both § 1681i and § 1681e(b).

The motion should be denied as to the FCRA counts.

## V. PLAINTIFF'S ICFA CLAIM SURVIVES (COUNT 4)

LexisNexis argues the ICFA claim fails because Plaintiff has not alleged a false statement by LexisNexis. The ICFA prohibits both deceptive and unfair practices. Conduct can be unfair even without an affirmative misrepresentation. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002).

Plaintiff has alleged that LexisNexis engaged in unfair practices: **(a)** by continuing to report Liberty Mutual's denial while omitting the documented role of BJB's building-code violations, **(b)** by allowing or effectuating the alteration of the claim description to align with the enterprise's narrative, **(c)** and by refusing even to open Plaintiff's detailed rebuttal after receiving notice of the ALJ finding. These allegations describe unfair conduct in the course of trade or commerce and are sufficient at the pleading stage.

**Exhibit E** further supports the unfairness of LexisNexis's reporting. On August 4, 2025, a State Farm agent cited the CLUE entry, treated Plaintiff as high-risk for at least five years, and explicitly called the underlying practice unfair because *"claims follow the person, not the property."* LexisNexis collects and analyzes property and insurance data on millions of consumers and properties. LexisNexis' own publications describe how their industry wastes billions of dollars. **Exhibit G** shows LexisNexis itself wastes approximately $100M to $300M annually by not performing a simple low cost permit check while investigating disputes.

For these reasons, Plaintiff has adequately alleged unfair practices by LexisNexis. The motion should be denied as to this count.

## VI. PLAINTIFF'S RICO CLAIM SURVIVES (COUNT 1)

LexisNexis argues that the RICO claim fails under Rule 9(b) because the complaint does not allege mail and wire fraud with sufficient particularity. Plaintiff has met that standard sufficient for civil proceedings. See *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479 (1985).

### A. Association-in-Fact Enterprise

Plaintiff has plausibly alleged an association-in-fact enterprise consisting of Liberty Mutual, BJB Properties, LexisNexis, Experian, Hunter Warfield, and Credit Control Services. The enterprise had a common purpose (to suppress Plaintiff's safety claims and extract continued payments through coordinated denial, adverse reporting, and collection), ongoing relationships among the members, and sufficient continuity. See *Boyle v. United States*, 556 U.S. 938 (2009).

### B. LexisNexis's Specific Predicate Acts

LexisNexis actively participated in the conduct of the enterprise's affairs through the following specific acts, each of which involved the use of the mails or wires:

1. LexisNexis participated in a **meeting of the minds** among the key enterprise members on **August 15, 2025** while documenting Plaintiff's USPS address history **(Exhibit L-2)**;
2. On or about September 15, 2025, LexisNexis issued a CLUE report that altered the description of Plaintiff's claim from *"weather"* damage to *"water"* damage, aligning the report with the false narrative advanced by Liberty Mutual and BJB Properties **(Marquee Exhibits** and the September 15 CLUE report, **Exhibit L,** Dkt 32).

3. Between September 16 and September 25, 2025, Plaintiff sent LexisNexis detailed certified disputes and a four-page rebuttal that **(a)** identified nineteen specific inaccuracies in the CLUE report, **(b)** attached a formal 2020 Administrative Law Judge finding that BJB Properties had violated applicable building codes, and **(c)** expressly accused LexisNexis of altering or allowing the alteration of the report to further the enterprise's narrative.

4. LexisNexis refused to open or process the September 25 rebuttal, stamped the envelope *"Return to Sender,"* and returned it unopened. LexisNexis then continued to maintain and disseminate the uncorrected CLUE entry through interstate wires.

5. The continued reporting caused a concrete adverse action: on August 4, 2025, State Farm cited the same CLUE entry, treated Plaintiff as high-risk for at least five years, and described the practice as unfair because *"claims follow the person and not the property"* **(Exhibit E).**

These allegations identify the **who** (LexisNexis), the **what** (alteration of the claim description and refusal to reinvestigate after specific notice), the **when** (September 8–25, 2025, and ongoing thereafter), the **where** (the CLUE database and the U.S. mails), and the **how** (use of interstate wires and mails to disseminate and lock in the altered report after receiving detailed notice of inaccuracy and a formal administrative finding). This is the particularity Rule 9(b) requires.

## C. Pattern and Continuity

When the same dysfunctional pattern appears across multiple entities – it is a coordinated scheme. LexisNexis's acts were not isolated or passive. They formed part of a continuing pattern: the coordinated claim-file sharing, the alteration of the CLUE report, the refusal to reinvestigate after specific notice, and the ongoing dissemination of the uncorrected entry. These acts had the same or similar purposes, results, participants, and methods of commission, and they continued over a sufficient period to establish continuity. This is sufficient to support a claim under 18 U.S.C. § 1962(c).

When presented with evidence of Defendant's participation in a scheme with Liberty Mutual and BJB Properties, LexisNexis continued participating **(Exhibit BB).** This plausibly supports a claim under 18 U.S.C. § 1962(d). Under *Smith v. United States,* 568 U.S. 106 (2013), a defendant bears the burden of proving affirmative withdrawal from the enterprise.

## D. Conclusion on the RICO Claim

Plaintiff has adequately alleged that LexisNexis actively participated in an association-in-fact enterprise through a pattern of racketeering activity involving mail and wire fraud that resulted in harm. The motion should be denied as to the RICO claim.

## VII. REMAINING ARGUMENTS

LexisNexis correctly notes that certain counts (FDCPA, IIPPA, IIED, and RLTO) were not specifically directed at it. To the extent the Court finds those counts lack sufficient particularity as to LexisNexis, Plaintiff does not oppose dismissal of those particular counts as to LexisNexis only, without prejudice to the claims against the other defendants.

Because the RICO, FCRA, and ICFA claims survive as to LexisNexis, the Unjust Enrichment and Intentional Infliction of Emotional Distress claims that rest on the same conduct also survive at this stage. See *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007).

LexisNexis has the ability to accept and reject mail at that address, and this particular piece was not accepted. **Exhibit S** shows the certified letter sent to the identical LexisNexis address that accepted a comparable letter one week prior; despite bearing a clear and complete 9-digit ZIP Code, it was returned with a USPS *'insufficient address'* endorsement, a deliberate **black marker streak** across the envelope, a handwritten **'IA,'** and a **black marker 'X'** beneath the yellow postal return sticker.

Most significantly, the CLUE report documented a **meeting of the minds** on **August 15, 2025,** confirming the coordinated nature of the information it was disseminating **(Exhibit L-2).** On that day, **Liberty Mutual's** Veronika Grant wrote its second denial letter; **BJB Properties** issued an unsigned demand for $1,607; and **LexisNexis** recorded Plaintiff's address information through the United States Postal Service. Conduct of this nature — the misuse of protected information — is the type of activity prohibited by the Gramm Leach Bliley Act (15 U.S.C. §§ 6801 et seq.), the FCRA (15 U.S.C. § 1681q), Mail Fraud, and the ICFA by statute.

Therefore, dismissal with prejudice is inappropriate. Any deficiencies are the type that can be cured by amendment, especially for a pro se plaintiff. Leave to amend should be freely given. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## VIII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny LexisNexis Risk Solutions Inc.'s Motion to Dismiss as to the FCRA, ICFA, Unjust Enrichment, IIED, and RICO claims, and that any dismissal of other claims be without prejudice and with leave to amend. Plaintiff further requests that the Court order LexisNexis to Answer the First Amended Complaint.

*For in the end, math rules, law may guide, but conscience is all.*

Respectfully submitted,

/s/ Brian Alan Crofoot, Pro se

**Email:** crofoot.bc@gmail.com

**Dated:** August 5, 2026

## IX. CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2026, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification to all counsel of record.

_Brian a Crofoot_

_____

/s/ Brian Alan Crofoot, Pro se Plaintiff