
BC

FILED
8/5/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
MAM

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN A. CROFOOT, | ) | **Case No.** 1:26-cv-00672 |
| *Plaintiff,* | ) | |
| | ) | **Hon. Judge:** Jeffrey I. Cummings |
| v. | ) | |
| | ) | |
| LIBERTY MUTUAL PERSONAL | ) | |
| INSURANCE COMPANY, ET AL, | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT BJB PROPERTIES, INC.'S

## MOTION TO DISMISS

**TO THE HONORABLE JUDGE AND DEFENDANTS:**

**I. INTRODUCTION**

Plaintiff Brian Alan Crofoot, appearing pro se, respectfully submits this Opposition to Defendant BJB Properties, Inc.'s Motion to Dismiss the Amended Complaint **(Dkt 54)**. BJB attempts to recharacterize this case as a routine landlord-tenant dispute over a water leak. That framing is false and ignores physical laws. The Amended Complaint and supporting exhibits document a multi-year pattern of regulatory defiance, refusal to remediate a life-safety hazard, material misrepresentations to an insurer, misuse of private information, and coordinated adverse actions against the tenant who documented the conditions **(Marquee Exhibits).**

Plaintiff has stated multiple plausible claims. The motion should be denied.

**Table of Contents**

**II. LEGAL STANDARD** ........ **2**

**III. ARGUMENTS** ........ **3**

    A. The Claim-File Sharing Is the Critical Coordinating Act ........ 3

    B. Count I (RICO) Is Properly Pled ........ 4

    C. Count II (FCRA) – Furnisher Liability ........ 8

    D. Count IV (ICFA) Is Properly Pled ........ 9

    E. Count V (IIED) States a Plausible Claim ........ 10

    F. Count VII (RLTO) States Plausible Claims ........ 11

    G. The Remaining Counts ........ 12

**IV. CONCLUSION** ........ **13**

**CERTIFICATE OF SERVICE** ........ **14**

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) tests the sufficiency of the complaint, not its merits. The Court must accept all well-pled factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). **A pro se complaint is entitled to liberal construction.** *Erickson v. Pardus*, 551 U.S. 89 (2007). Dismissal is proper only if the complaint fails to state a claim that is plausible on its face. Leave to amend be freely given especially for pro se litigants. *See Fed. R. Civ. P. 15(a); Foman v. Davis*, 371 U.S. 178, 182 (1962).

**III. ARGUMENTS**

**A. The Claim-File Sharing Is the Critical Coordinating Act**

The single most important fact in this case is that Liberty Mutual shared Plaintiff's confidential claim file with BJB's counsel, Kathleen Barry Boychuck **(Exhibit C).** That sharing is not a minor or incidental event. It is direct evidence of coordination between the two primary actors. Liberty took protected claim information and delivered it to the landlord; BJB received and used it. From that point forward, the false safety narrative to state regulators **(Exhibit D)**, the joint minimization of the sewage-drenched electrical hazard **(Marquee Exhibits 1 to 5)**, the rent demands while conditions persisted **(Exhibit EE)**, the delinquency reporting, and the downstream collection efforts were no longer independent actions. They became a coordinated response.

**Exhibit C** transforms what the defendants try to portray as parallel, unrelated conduct into a unified effort to suppress documentation of the hazardous conditions, extract payment, avoid accountability, and choosing a path that prioritizes cost or convenience over fixing the danger. BJB's participation in that coordinated effort — receiving the claim file, aligning the narrative, misleading regulators and its residents, issuing demands, and feeding the reporting and collection pipeline — places it at the core of the enterprise and supplies the foundation for the claims that survive against it.

**B. Count I (RICO) Is Properly Pled**

RICO functions as a mirror that simply reflects back the coordinated pattern of predicate acts the Defendants themselves created and executed. BJB moves to dismiss Count I by characterizing Plaintiff's claims as nothing more than *"a landlord's response to a water leak in an apartment."* That characterization is incomplete, misleading, and contradicted by the well-pled allegations and documentary evidence.

To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege conduct of an enterprise through a pattern of racketeering activity. An association-in-fact enterprise requires three structural features under *Boyle v. United States*, 556 U.S. 938 (2009): a common purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the associates to pursue the enterprise's purpose.

Under *Salinas v. United States,* 522 U.S. 52, 65–66 (1997), a defendant may be liable under 18 U.S.C. § 1962(d) for conspiring to violate RICO even if he does not personally commit or agree to commit two predicate acts. It is enough that the defendant knew of and agreed to further the endeavor that included a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985), held that a criminal conviction is not necessary to bring a civil proceeding under 18 U.S.C. § 1964(c).

BJB's receipt and use of Liberty's confidential claim file **(Exhibit C)**, its alignment with the false safety narrative **(Exhibit D)**, and its subsequent rent demands and reporting activity are sufficient to show that it agreed to further the enterprise's common purpose. This independently states a claim under 18 U.S.C. § 1962(d) conspiracy.

### 1. Common Purpose

The enterprise shared a common purpose: to avoid liability for known hazardous and unpermitted conditions in the building, extract payments, and to punish Plaintiff for documenting those conditions and pursuing remedies. This purpose is evidenced by BJB's multi-year failure to comply with a **2020 Administrative Law Judge order requiring building permits,** its installation and continued operation of unpermitted systems, its refusal to remediate a sewage-drenched 200-amp electrical panel located directly above a gas main, its coordination with Liberty Mutual to advance a false *"perfectly safe"* narrative, and the subsequent adverse reporting and collection efforts against Plaintiff.

### 2. Relationships Among the Members

The members of the enterprise maintained interdependent relationships. Most directly, on or about July 25, 2025, BJB's counsel Kathleen Boychuck sent a letter **(Exhibit C)** in which she quoted Liberty Mutual's claim details and advanced the false narrative that the electrical conditions posed no safety risk. Liberty Mutual's April Sandoval confirmed to the Illinois Department of Insurance it communicated with the landlord on July 2, 2026 **(Exhibit D)**. Boychuck obtained and misused confidential claim information and made material misrepresentations to an insurer concerning a known hazard that BJB was actively refusing to address. Conduct of this nature — knowingly making or causing material misrepresentations to an insurance company in connection with a claim — is the type of activity prohibited by the Illinois Insurance Fraud Act, 720 ILCS 5/17-10.5. This interference demonstrates a coordinated relationship between BJB and Liberty Mutual, not independent parallel conduct.

### 3. Longevity

The enterprise's activity began no later than July 2020, when an Administrative Law Judge ordered BJB's related entity to obtain required building permits **(Exhibit II,** Dkt 32, pg 3). BJB did not comply. It continued to install and operate unpermitted systems. This pre-existing pattern of regulatory defiance predates Plaintiff's lease and continued through the 2025 events. This ongoing multi-year duration satisfies *Boyle*.

### 4. BJB's Predicate Acts and Participation in the Enterprise

The pattern did not begin with a June 2025 water leak. It began with BJB's failure to comply with the 2020 ALJ order. The Amended Complaint and **Marquee Exhibits** further document a sewage-drenched 200-amp electrical panel located directly above a gas main.

BJB received and used Plaintiff's confidential insurance claim information shared by Liberty Mutual **(Exhibit C)** to coordinate a false narrative that minimized the sewage intrusion into the electrical panel and characterized Plaintiff's professional safety assessment as mere *"tenant complaints."* While the hazardous conditions persisted, BJB issued rent demands and a landlord's notice for nonpayment and refused proper inspection **(Exhibit R)**. BJB then reported or caused the reporting of the resulting rent delinquency to Experian's Rent Bureau and placed the disputed debt with Hunter Warfield for collection. These acts involved the use of mails and wires (rent demands, notices, communications with Liberty Mutual **(Exhibit D)**, and transmission of delinquency information) in furtherance of the common purpose of suppressing documentation of the code violations and hazardous conditions while extracting payment.

The Amended Complaint and the exhibits already on the docket (particularly **Exhibit C**, the ALJ-related findings, **Exhibit II**, and the rent demand documents, **Exhibit EE,)** supply the who, what, when, and how of BJB's participation with the particularity required by Rule 9(b).

Plaintiff properly pled the elements of extortion as a predicate act. BJB used the threat of collection and adverse consequences while simultaneously refusing to address a documented life-safety hazard and while coordinating false characterizations of that hazard with other defendants. BJB's bare assertion that the claim is *"unsupported"* does not overcome the specific factual allegations and evidence.

BJB's motion simply ignores the timeline, the 2020 ALJ order, the documented life-safety hazard, Boychuck's interference, and the exhibits.

Count I states a plausible RICO claim against BJB.

## C. Count II (FCRA) – Furnisher Liability

BJB argues that there is no private right of action under 15 U.S.C. § 1681s-2(a) and that Plaintiff failed to plead the elements of a claim under § 1681s-2(b).

Section 1681s-2(a) imposes accuracy duties on furnishers but does not create a private right of action. Section 1681s-2(b), however, does. It requires a furnisher, after receiving notice of a dispute from a consumer reporting agency, to conduct a reasonable investigation and to correct or delete inaccurate or misleading information.

Plaintiff alleged that BJB furnished incomplete or inaccurate information regarding the tenancy and alleged delinquency, and that adverse information was reported to and appeared in consumer reports. Plaintiff further alleged that he disputed the information. At the pleading stage, these allegations are sufficient to state a claim under § 1681s-2(b) against a party that acted as a furnisher through a withdrawn shell entity managed by Kathleen Boychuck. Whether BJB received formal notice from a consumer reporting agency and thereafter failed to investigate or correct the information are matters that can be tested in discovery. Dismissal on this ground is premature.

To the extent BJB contends it never furnished information at all, that factual assertion is contradicted by the allegations and exhibits concerning adverse reporting linked to the tenancy dispute resulting in a concrete adverse action.

Count II therefore states a plausible claim against BJB under § 1681s-2(b).

**D. Count IV (ICFA) Is Properly Pled**

Plaintiff has unique and specialized experience in environmental engineering per *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

Plaintiff alleges that BJB engaged in both deceptive and unfair practices with the required particularity. BJB ignored a July 2020 ALJ order **(Exhibit II)**, continued to operate unpermitted systems, refused to remediate a sewage-drenched electrical panel above a gas main after receiving notice from a credentialed professional, and through its counsel advanced a false safety narrative to Liberty Mutual **(Exhibit C)** and regulators **(Exhibit D).** These allegations identify the actors, the timing, the content of the misrepresentations, and the supporting documents.

Plaintiff further alleged a **"circular trap:"** BJB denied the hazard and refused the repair, then treated Plaintiff's insistence on safety as the problem. This structural bind constitutes an unfair practice under the ICFA. The Amended Complaint specifically alleges that the conduct was knowing and intentional and that Plaintiff suffered actual damage.

Count IV states a plausible ICFA claim.

**E. Count V (IIED) States a Plausible Claim**

BJB argues that its conduct was not extreme and outrageous as a matter of law. Illinois requires conduct that goes beyond all possible bounds of decency. Forcing a tenant to continue living with **a sewage-drenched 200-amp electrical panel located directly above a gas main** — after repeated notice from an environmental engineer and while refusing to remediate — is not ordinary landlord-tenant friction. Misuse of an insured's insurance claim is not ordinary insurance company-policyholder friction. Conduct of this nature — knowingly or causing the dissemination of, or using confidential insurance information without explicit written authorization — is the type of activity prohibited by the Illinois Identity Theft Act, 720 ILCS 5/16-30. A jury could reasonably find that conduct extreme and outrageous.

At the pleading stage, the well-pled description of the hazard, BJB's knowledge, claim file sharing, and its refusal to act must be accepted **(Marquee Exhibits 1 to 5, photographs of the hazards)**.

Count V survives.

**F. Count VII (RLTO) States Plausible Claims**

Section 5-12-070 requires a landlord to maintain the premises in compliance with the municipal code and to make necessary repairs. BJB's multi-year noncompliance with the 2020 ALJ permit order **(Exhibit II),** continued operation of unpermitted systems, and refusal to remediate a documented electrical-and-gas hazard constitute specific failures to meet that duty.

Additionally, the National Electrical Code (NEC) Sections 110.11 and 110.12, require electrical systems be protected from deteriorating agents such as water and corrosive chemicals. *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365 (1926) held that a defendant bears the burden of proof when housing law applies.

Plaintiff notified BJB's leasing agent Jeffrey Ickow and Kathleen Boychuck prior to vacating on August 16, 2025. BJB's argument that no "*immediate danger*" existed because Plaintiff remained in the unit for a period of time misstates the nature of the hazard. **A sewage-contaminated electrical panel above a gas main presents an immediate danger to health and safety.** The fact that Plaintiff did not immediately abandon the premises does not convert the condition into a non-urgent one.

Plaintiff further alleged that after he documented the hazard and pursued his rights, BJB caused or facilitated adverse reporting and collection pressure while still refusing to address the underlying life-safety condition **(Exhibit C)**. These actions, taken in response to protected activity, support a retaliation claim when all reasonable inferences are drawn in Plaintiff's favor. See Landlord Retaliation Act, 765 ILCS 721/5 & 20 Rebuttable Presumption of Retaliation.

Count VII states claims.

**G. The Remaining Counts**

### 1. FDCPA (Count III)

BJB correctly notes that the FDCPA generally applies to those who collect debts owed to another. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017). The rent allegedly due was owed directly to BJB. As currently pled against BJB itself, this claim faces a substantial legal obstacle under *Henson.* Plaintiff reserves the right to refine the claim if discovery reveals otherwise.

### 2. IIPPA (Count VI)

The private right of action under the Illinois Insurance Information and Privacy Protection Act is limited to insurance institutions, agents, and insurance-support organizations. BJB is none of those. While Boychuck's interference remains relevant evidence of coordination for RICO and ICFA purposes, Plaintiff does not oppose dismissal of the pure IIPPA claim as against BJB only.

### 3. Unjust Enrichment (Count VIII)

This case is not a routine landlord-tenant-insurance dispute. Rather, it is about the years-long concealment of unpermitted building systems in violation of a 2020 ALJ's order that predates Plaintiff's tenancy, and the coordinated misuse of his insurance file. Courts have consistently recognized that contracts unfairly benefit those who draft it. **Plaintiff did not have informed consent to the lease.** The lease expressly does not bar Unjust Enrichment claims. That said, Plaintiff acknowledges the force of this argument at the pleading stage while reserving alternative theories of recovery.

**IV. CONCLUSION**

BJB's motion rests on an incomplete and sanitized summary of the facts. The Amended Complaint and exhibits document a multi-year pattern of regulatory defiance, refusal to remediate a life-safety hazard, material misrepresentations to an insurer, and coordinated adverse actions. Plaintiff has stated plausible claims under RICO, the FCRA, ICFA, IIED, and the RLTO. The motion should be denied as to those counts, and BJB Properties, Inc. be ordered to Answer the Amended Complaint, the **Marquee Exhibits,** and supporting evidence. As to the remaining counts, Plaintiff has stated his position above.

Even on Labor Day, their accountant was still demanding a *'balance due'* from a tenant without a lawyer while the sewage-drenched fuse box over the gas main sat untouched — yet that same tenant without a lawyer has now forced them to Answer in Federal Court.

*For in the end, Physics reigns supreme, Law may guide, but Conscience is all.*
*The Evidence Sings, and the Enterprise Must Stop.*

Respectfully submitted,

Brian Alan Crofoot, Pro Se Plaintiff

**Email:** crofoot.bc@gmail.com

**Date:** August 5, 2026

**CERTIFICATE OF SERVICE**

I, Brian Alan Crofoot, hereby certify that on August 5, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

_____

/s/ Brian Alan Crofoot, Pro se Plaintiff